**Roy HICKS, Plaintiff,**

v.

**Robert C. FEENEY, Defendant.**

**Civ. A. No. 83–185 LON.**

United States District Court,
D. Delaware.

July 14, 1987.

---

**80**

Joseph M. Bernstein, Wilmington, Del., for plaintiff.

Marcia Rees, State Dept. of Justice, Wilmington, Del., for defendant.

## OPINION

LONGOBARDI, District Judge.

Plaintiff brought this civil rights action under 42 U.S.C. § 1983 claiming that his confinement at the Delaware State Hospital deprived him of a liberty interest in violation of the Fourteenth Amendment of the United States Constitution. On November 8, 1984, this Court held that while Plaintiff had been deprived of a liberty interest, that deprivation had not occurred without due process of law. *Hicks v. Feeney,* 596 F.Supp. 1504 (D.Del.1984). The Court based its decision on the ground that post-deprivation remedies were available to Plaintiff and that under *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), he was, therefore, unable to make out a claim under section 1983. The Court alternatively held that Defendant Feeney was entitled to qualified immunity.

On appeal, the Third Circuit vacated the Order of this Court, holding that the *Parratt* post-deprivation remedy exception to section 1983 violations did not apply to this case. *Hicks v. Feeney,* 770 F.2d 375 (3d Cir.1985). The Third Circuit also remanded the action to this Court for reconsideration of Defendant Feeney's immunity claim in light of the Supreme Court's recent decision in *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

Upon remand to this Court, Defendant Feeney initiated discovery efforts. Defendant duly noticed the deposition of Plaintiff for January 18, 1986. Docket Item ("D.I.") 46. Plaintiff appeared at the deposition but, after approximately forty minutes of questioning, refused to answer certain questions concerning Exhibit 1 to his deposition. Deposition Transcript, D.I. 54, at 30. Plaintiff was apparently disturbed by not having been given a copy of the exhibit prior to his deposition. *Id.* at 29. In order to accommodate Plaintiff's concerns, counsel agreed to recess the deposition for one hour. *Id.* at 30–31. Plaintiff never returned to the deposition. *Id.* at 31–32.

On January 30, 1986, Defendant again duly noticed Plaintiff's deposition. D.I. 53. Plaintiff never appeared for the scheduled deposition. D.I. 55.

On February 26, 1986, Defendant moved to compel Plaintiff's deposition. D.I. 55. Before the Court could rule on the motion, Defendant again noticed Plaintiff's deposition. D.I. 58. Once again, Plaintiff failed to appear. D.I. 61.

On July 9, 1986, Plaintiff's attorney informed the Court that he had discussed with Plaintiff the need to comply with discovery requests and the potential sanctions he faced for his failure to cooperate. Letter of Joseph Bernstein, Esquire to The Honorable Joseph J. Longobardi dated July 9, 1986. Mr. Bernstein explained both in his letter and in a telephone conference held on July 11, 1986, that Plaintiff probably would not respond to additional deposition notices due to his embarrassment about the subject matter of this litigation.

On July 16, 1986, citing Plaintiff's steadfast refusal to cooperate with Defendant's proper attempts to gain discovery, the Court ordered Plaintiff to appear for a deposition on July 29, 1986. The Court admonished Plaintiff that if he did not appear at the deposition and cooperate, the Court would impose sanctions under Rule 37 of the Federal Rules of Civil Procedure.

In spite of the Court's Order and in spite of its warnings regarding sanctions, Plaintiff failed to appear at the deposition. D.I. 64.

Not surprisingly, Defendant has now moved for sanctions under Rule 37. Defendant seeks dismissal of this action together with an award of attorney's fees and costs. For the reasons discussed below, Defendant's motion is granted.

Defendant's motion for sanctions is based on Federal Rule of Civil Procedure 37(b)(2) which permits the imposition of sanctions against a party who fails to obey a court order to provide or permit discovery. As discussed below, the Court concludes that dismissal is warranted under Rule 37(b)(2) in light of Plaintiff's violation of the Court's July 16, 1986, Order. In addition, the Court concludes that dismissal is appropriate under Rule 37(d) which permits the imposition of sanctions against a party who fails to appear for his deposition or otherwise fails to provide discovery. By its terms, Rule 37(d) does not require violation of a Court order before sanctions may be imposed. *See Al Barnett & Son, Inc. v. Outboard Marine Corp.*, 611 F.2d 32, 35 (3d Cir.1979). Thus, given Plaintiff's conduct in this case, dismissal is justified under either Rule 37(b)(2) or Rule 37(d).[1]

The Court notes at the outset that dismissal is a drastic sanction which "should be reserved for those cases where there is a clear record of delay or contumacious conduct by the plaintiff." *Donnelly v. Johns-Manville Sales Corp.*, 677 F.2d 339, 342 (3d Cir.1982). A motion to dismiss must be approached with extreme caution, for courts must be reluctant to deprive a plaintiff of the opportunity to have his claim adjudicated on the merits. *Titus v. Mercedes Benz of North America*, 695 F.2d 746, 749 (3d Cir.1982); *Donnelly*, 677 F.2d at 341. The Courts have not hesitated to invoke the extreme sanction of dismissal, however, where a plaintiff has frustrated the purposes of discovery. In *Al Barnett*, 611 F.2d 32, for example, the Third Circuit upheld the dismissal of an action against several plaintiffs who failed to answer interrogatories, appear at their scheduled depositions or produce requested documents. While the Court was fully cognizant of the harshness of dismissal, it noted that plaintiffs, having flagrantly ignored their discovery obligations, had brought that sanction upon themselves. *Id.* at 36. Dismissal, "although severe, is a necessary tool, both to punish in the individual action and to deter future abuses of the discovery process." *Id.*[2] Thus, as the Supreme Court has recognized, dismissal, the "most severe in the spectrum of sanctions ... must be available to the district court in appropriate cases." *National Hockey League v. Met. Hockey Club*, 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747

---

1. At oral argument, the Court raised the issue of the appropriateness of imposing sanctions under Rule 37(d) and provided Plaintiff an opportunity to address it. D.I. 70 at 29.

2. *See also Kabbe v. Rotan Mosle, Inc.*, 752 F.2d 1083 (5th Cir.1985) (Plaintiff's failure to appear for her deposition on three occasions, the final appearance having been ordered by the court, justified dismissal); *Hashemi v. Campaigner Publications, Inc.*, 737 F.2d 1538 (11th Cir.1984) (Where plaintiff repeatedly failed to appear and give deposition testimony, dismissal was appropriate.); *Hindmon v. National Ben Franklin Life Ins. Corp.*, 677 F.2d 617 (7th Cir.1982) (Dismissal warranted where plaintiff, despite court's warning that failure to cooperate with discovery requests would result in sanctions, failed to appear at deposition, failed to produce requested documents and failed to properly answer interrogatories); *Bonaventure v. Butler*, 593 F.2d 625 (5th Cir.1979) (Plaintiff's repeated failure to appear for his deposition, the last appearance hav-

ing been ordered by the court, warranted dismissal.); *Yannitelli v. Navieras de Puerto Rico*, 106 F.R.D. 42 (S.D.N.Y.1985) (Plaintiff's repeated failure to attend depositions, despite court order to do so, justified dismissal.); *Fisher v. Henderson*, 105 F.R.D. 515 (N.D.Tex.1985) (Plaintiff's failure to appear for her deposition on three occasions, coupled with other discovery failures, rendered dismissal appropriate.); *Arthur v. Starrett City Associates*, 98 F.R.D. 500 (E.D.N.Y.1983) (Dismissal warranted where plaintiff failed to appear at deposition and could not be located.); *Wright v. Maritime Overseas Corp.*, 96 F.R.D. 686 (N.D.Cal.1983) (Dismissal appropriate in light of plaintiff's failure to attend five scheduled depositions, failure to comply with Magistrate's Order to appear at deposition, inability to be located and refusal to provide verified discovery responses.) *Gorod v. United States*, 86 F.R.D. 225 (D.Mass.1980) (Plaintiff's refusal to answer interrogatories despite court order to do so, together with refusal to appear at depositions, warranted dismissal.)

**82**

(1976).[3] As the discussion below illustrates, the Court believes that this is just such a case.

The Court's analysis must begin with consideration of the factors set forth in *Poulis*, 747 F.2d at 868. *See Ali v. Sims*, 788 F.2d 954 (3d Cir.1986); *Ennis v. New Jersey Bell Telephone Co.*, 782 F.2d 396 (3d Cir.1985), *cert. denied*, 475 U.S. 1082, 106 S.Ct. 1461, 89 L.Ed.2d 718 (1986). In *Poulis*, the District Court dismissed the plaintiffs' complaint due to their counsel's failure to comply with court-imposed deadlines and other procedural requisites. In upholding the dismissal, the Third Circuit explained that its review of the District Court's dismissal was guided by the trial court's balancing of the following factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary by the party's conduct; (3) a history of dilatoriness; (4) whether the conduct of the party or attorney was willful or in bad faith; (5) the effectiveness of alternative sanctions; and (6) the meritoriousness of the claim. 747 F.2d at 868. The Court will address each of these factors in turn.

## 1. EXTENT OF THE PARTY'S PERSONAL RESPONSIBILITY

 Where a party's attorney, rather than the party himself, is responsible for a failure to provide discovery or comply with a Court order, dismissal may be an unduly harsh sanction. There is no doubt here, however, that Plaintiff, and not his attorney, is personally responsible for the failure to provide discovery and for the violation of the Court's July 16, 1986 Order. It is Plaintiff who failed to return to the January 28, 1986 deposition and who failed to appear at each of the subsequently scheduled depositions. Plaintiff's attorney has made every effort to move this case forward and is in no way responsible for Plaintiff's failure to provide discovery. The first *Poulis* factor thus clearly weighs in favor of dismissing Plaintiff's complaint.

## 2. PREJUDICE TO THE ADVERSARY

As Plaintiff is forced to concede, Defendant has suffered substantial prejudice as a result of Plaintiff's repeated failure to appear at scheduled depositions. Plaintiff's Memorandum in Opposition to Defendant's Motion for Sanctions, D.I. 67 at 7. The discovery rules are designed to enable litigants to narrow and clarify the issues in dispute, to ascertain the facts underlying those issues and to ferret out the strengths and weaknesses of an adversary's case. *See Hickman v. Taylor*, 329 U.S. 495, 500, 67 S.Ct. 385, 388, 91 L.Ed. 451 (1947). Under the liberal discovery rules, civil trials are not to be carried on in the dark. *Id.* Instead, the parties are to be afforded opportunities to obtain the fullest possible knowledge of the issues and facts prior to trial. *Id.* Plaintiff has wholly deprived Defendant of the opportunity to avail himself of these important benefits. Without an adequate opportunity to take Plaintiff's deposition Defendant is unable to ascertain the facts underlying Plaintiff's claims, to test the efficacy of those claims or to gauge his credibility as a witness. To force Defendant to proceed to trial under such constraints would unfairly hinder his ability to mount a defense.

## 3. HISTORY OF DILATORINESS

That Plaintiff's conduct in this litigation reflects a pattern of dilatoriness is readily apparent. Plaintiff did appear for his initial deposition but failed to return following a recess. On three subsequent occasions, Plaintiff failed to appear altogether at duly noticed depositions. Thus, on four separate occasions, Plaintiff has refused to cooperate with Defendant's legitimate discovery efforts.

The Court is unpersuaded by Plaintiff's argument that his appearance at his initial deposition, together with his cooperation in preparing responses to interrogatories and requests for production, indicates that there has been no history of dilatoriness on his part. However cooperative Plaintiff

---

**3.** *See also Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 867 n. 1 (3rd Cir.1984) ("[W]e have not hesitated to affirm the district court's imposition of sanctions, including dismissals in appropriate cases.")

may have been with regard to certain isolated discovery efforts, the fact remains that he has wholly frustrated Defendant's legitimate efforts to pursue discovery by way of deposition and he has done so repeatedly.

## 4. WHETHER PARTY'S CONDUCT WAS WILLFUL OR IN BAD FAITH

There is no question here that Plaintiff's refusal to cooperate with Defendant's discovery efforts has been willful. There has been no allegation that Plaintiff's mental state makes it difficult or impossible for him to appear at the deposition, nor any allegation that he is otherwise unable to do so.[4] Plaintiff was advised by both his counsel and the Court that failure to appear at the depositions could result in consequences adverse to his lawsuit and he indicated that he understood those potential consequences. D.I. 62 at 3–4; D.I. 70 at 20. Despite these admonitions, in the words of his own attorney, Plaintiff made a "conscious decision" not to appear. D.I. 70 at 19. As Plaintiff has admitted, his decision not to do so can be considered nothing other than willful. D.I. 67 at 3.

## 5. ALTERNATIVE SANCTIONS

The Court recognizes that dismissal "must be a sanction of last, not first, resort." *Poulis,* 747 F.2d at 869. For that reason, it is incumbent upon a trial court to explore the effectiveness of lesser sanctions before ordering the dismissal of a case. *See, e.g., Donnelly,* 677 F.2d at 342.

This Court has already attempted to use lesser sanctions to compel Plaintiff to appear at his deposition. In its July 16, 1986, Order compelling Plaintiff's appearance at his July 29, 1986 deposition, the Court ordered Plaintiff to pay the sum of $410.50 to Defendant for costs and fees incurred in preparing for and attending the depositions at which Plaintiff failed to appear. D.I. 62. In spite of the imposition of fees and costs, Plaintiff again failed to appear. The

Court's efforts to utilize sanctions less than dismissal have thus met with utter failure.

Nonetheless, Plaintiff argues that dismissal is unwarranted and that lesser sanctions are appropriate. Plaintiff points to *Coca–Cola Bottling Co. v. Coca–Cola Co.,* 110 F.R.D. 363 (D.Del.1986), in which this Court explained that any sanction under Rule 37 must be "just" and must be "specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Id.* at 367 (quoting *Transportes Aereos de Angola v. Ronair, Inc.,* 104 F.R.D. 482 (D.Del.1985)). *Coca–Cola,* however, is of no help to Plaintiff here. While Plaintiff argues that under *Coca–Cola,* dismissal is a sanction exceeding the scope of the specific claims upon which Defendant seeks discovery and that a preclusion order is therefore more appropriate, the Court disagrees.

In order to pursue the inquiry mandated by *Coca–Cola,* it is necessary to determine what issues remain to be litigated in this lawsuit. Plaintiff asserts that the only remaining issues are: (1) whether Defendant is entitled to immunity; and (2) the relief to which Plaintiff is entitled. The Court first notes that, contrary to Plaintiff's assertions, it does not believe that the Third Circuit has ruled as a matter of law that Plaintiff was deprived of liberty without due process. The Order of this Court appealed to the Third Circuit by Plaintiff held that Plaintiff had been deprived of a liberty interest but that under the post-deprivation remedy exception established in *Parratt,* 451 U.S. 527, 101 S.Ct. 1908, that deprivation had not occurred without due process. The Third Circuit vacated that Order; it did not reverse it. Thus, the issue of whether Plaintiff was deprived of liberty without due process also remains to be decided. As the discussion below illustrates, however, even assuming for the purposes of argument that liability has been established, the Court's conclusion that a preclusion order is not appropriate is no less warranted.

**4.** *Cf. Societe Internationale v. Rogers,* 357 U.S. 197, 212, 78 S.Ct. 1087, 1095, 2 L.Ed.2d 1255 (1958), *quoted in National Hockey League,* 427 U.S. at 640, 96 S.Ct. at 2779 (Dismissal is inappropriate where plaintiff's conduct is due to "inability, and not willfulness, bad faith, or any fault of [plaintiff].")

Plaintiff first suggests that the Court enter an Order precluding Plaintiff from testifying at trial concerning his mental status as of November, 1982. This suggestion is remarkable. First, Plaintiff apparently assumes that every statement he might make at trial would be favorable to his case. The Court is unwilling to make such an assumption. While perhaps not doing so intentionally, it is certainly possible that Plaintiff would make statements, particularly on cross-examination, which would undermine his own case. The Court cannot and will not deprive Defendant of the opportunity to elicit such testimony.

Secondly, it is critical to recognize that in a case such as this, where Plaintiff claims that as a result of unlawful confinement to a mental institution he suffered substantial injuries, it is imperative that the factfinder have an opportunity to observe the Plaintiff's demeanor as a witness. Without such an opportunity, the factfinder's ability to assess the viability of Plaintiff's claims would be severely hampered.

Plaintiff next suggests that the Court could prohibit Plaintiff from introducing evidence to rebut facts contained in the medical records concerning his hospitalization at the Delaware State Hospital. While this suggestion would certainly mitigate the prejudice to Defendant arising from Plaintiff's failure to appear at his deposition, it simply is not enough. This Court is firmly convinced that without an opportunity before trial to question Plaintiff in detail about his mental state and the facts surrounding his confinement and to thereby assess his credibility as a witness, Defendant's ability to proceed to trial would be unfairly infringed.

Plaintiff additionally suggests that the Court could enter an Order conclusively establishing that Plaintiff did not suffer any of the injuries claimed in his interrogatory answers. Plaintiff qualifies this proposal, however, by stating that any such Order "should not preclude an award of damages for the injuries which were conclusively established long before the present discovery problem arose." D.I. 67 at 8. Plaintiff asserts that it has already been "conclusively established" that he was wrongfully confined at the Delaware State Hospital. According to Plaintiff, "[i]n such a case, real injury may be inferred from the conditions and length of confinement alone." *Id.* As the Supreme Court recently made clear, however, the mere fact that a constitutional right has been violated does not, in and of itself, entitle an individual to compensatory damages. *Memphis Community School District v. Stachura,* 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986); *see also, Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). In order to recover compensatory damages, a party must demonstrate that he suffered some actual injury. *Id.*[5] Thus, if the Court were to adopt Plaintiff's proposal that an Order be entered conclusively establishing that Plaintiff did not suffer any of his claimed injuries, Plaintiff simply would not be entitled to recover compensatory damages.

The Court cannot enter such an Order. If Plaintiff were precluded from recovering compensatory damages, the case would proceed to trial on the basis of claims for nominal and punitive damages.[6] The dangers inherent in such an approach are clear. Despite Plaintiff's contrary assertions, the Court is not prepared to conclude that nothing Plaintiff could say at trial would affect his claim for punitive damages. In fact, Plaintiff's recollection of the events in question might well influence the factfinder in its resolution of the punitive damages claim. To force Defendant to de-

---

**5.** The Supreme Court's decision in *Carey* focused on the need to prove actual injury in connection with an alleged procedural due process violation. In *Stachura,* respondent argued that in the context of an alleged infringement of a substantive constitutional right, *Carey* does not control and actual injury therefore need not be proven. The Supreme Court squarely rejected that contention. 106 S.Ct. at 2544.

**6.** As this Court recently explained, punitive damages are available under section 1983 even in the absence of compensatory damages. *Metcalf v. Long,* C.A. No. 84–40 LON, Memorandum Opinion, at 2 n. 2 (D.Del. Dec. 19, 1986).

fend against a punitive damages claim without an opportunity to depose Plaintiff would thus result in unfair prejudice.

The obvious remedy for such prejudice would be an Order precluding Plaintiff from recovering punitive as well as compensatory damages. At that juncture, all that would remain is Plaintiff's claim for nominal damages together with a potential recovery of attorney's fees. While the vindication of constitutional rights is admittedly important and while it might be wholly proper to allow a plaintiff to proceed to trial solely on a claim for nominal damages in certain cases, this Court has grave doubts about allowing Plaintiff to do so under the circumstances of this case. Plaintiff's conduct in this litigation indicates that he has lost whatever motivation he may have had to diligently pursue this lawsuit. It is Plaintiff's attorney and not Plaintiff himself who is attempting to move this case forward. While the recovery of attorney's fees in civil rights cases serves an invaluable function in promoting the vindication of civil rights, the Court cannot condone a situation in which the recovery of attorney's fees has become the primary motivation for prosecuting a lawsuit.[7]

The Court has thus carefully considered the appropriateness of sanctions less than dismissal. For the reasons discussed above, the Court concludes that nothing short of dismissal will adequately protect Defendant against the prejudice arising from Plaintiff's refusal to appear at his deposition.

## 6. MERITORIOUSNESS OF THE CLAIM

The final factor to be considered by the Court in deciding whether dismissal is appropriate is the meritoriousness of Plaintiff's claims. While the Third Circuit, in vacating this Court's Order, did not hold that Plaintiff had been deprived of liberty without due process, the Court's discussion indicates that Plaintiff's claims do have some merit. It must be remembered, however, that while on their face Plaintiff's claims may appear meritorious, that meritoriousness may be tempered by Defendant's claim that he is entitled to immunity.

Even assuming, however, that Defendant is not entitled to immunity and that Plaintiff's claims are meritorious, the Court would still find dismissal appropriate. As this Court has noted, it is not necessary that each of the *Poulis* factors point to dismissal. *Coca–Cola*, 110 F.R.D. at 368 n. 9. Regardless of the merits of Plaintiff's claims, he has willfully obstructed Defendant's legitimate efforts to secure discovery. In so doing, he has substantially prejudiced Defendant's ability to defend against those claims.

## CONCLUSION

Our judicial system is remarkable in its ability to provide a forum in which parties may resolve their private disputes. Once Plaintiff sought the protection of that system, he incurred certain obligations designed to facilitate the resolution of *his* claim. Plaintiff has flagrantly disregarded his obligations. If Plaintiff had an objection to the taking of his deposition, or to a particular line of questioning, it was incumbent upon him to seek a protective order from the Court. *See Al Barnett*, 611 F.2d at 35–36. He never did so. The Court cannot tolerate such an abuse. As this Court has previously explained, while the Court respects Plaintiff's desire to maintain his privacy, justice requires that we protect the Defendant's interests as well. By his own conduct, Plaintiff has left the Court with no choice but to dismiss his lawsuit.

---

**7.** The Court in no way intends to impugn the motives or integrity of Plaintiff's attorney, whose efforts in prosecuting his client's case have been commendable. The Court has no doubt that when Plaintiff's complaint was first filed, this was not an "attorney's fees case." *See*

D.I. 70 at 22. But as Plaintiff's counsel was forced to concede at oral argument, Plaintiff's conduct may well have caused it to become one. *Id.* Under these circumstances, the Court simply concludes that the action should not be permitted to go forward.