ADVANCED AMERICA SERVICES, INC., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 91–1039C.

United States Court of Federal Claims.

Aug. 18, 1994.

Samuel Gdanski, Montebello, NY, for plaintiff.

Matthew S. Bode, Washington, DC, with whom was David M. Cohen, Director, Com-

mercial Litigation Branch, Civ. Div., and Stuart E. Schiffer, Acting Asst. Atty. Gen., U.S. Dept. of Justice, for defendant.

### OPINION

SMITH, Chief Judge.

This matter is before the court on defendant's motion to dismiss. Defendant claims that plaintiff's complaint should be dismissed under RUSCFC 37(b)(2)(C) and 41(b) for failure to obey this court's discovery orders and for failure to prosecute. After carefully reviewing the briefs of both parties and after oral argument, the court must grant defendant's motion and dismiss this case with prejudice.

### FACTS

This case involves a contract with the government for the performance of repair, maintenance, and overhaul on government-owned vehicles. Plaintiff Advanced America Services, Inc. alleges that the United States breached its obligation under the contract to fulfill "its requirement of, in good faith, checking the estimates of the prior year." Plaintiff asserts that the government's requirements were 50% below the government estimates that asserts that the government's requirements were 50% below the government estimates that plaintiff used to calculate its bid. Plaintiff is seeking to recover $90,000 as a result of the alleged breach.

On March 26, 1991, plaintiff instituted this action against the United States. On September 16, 1991, the court ordered that discovery would conclude on January 13, 1992. The government served on plaintiff its first set of interrogatories and requests for production of documents on December 6, 1991. Plaintiff failed to respond by January 8, 1992,[1] and on January 31, 1992, defendant requested the responses. On March 23, 1992, defendant again requested plaintiff's responses and advised plaintiff that if they were not received by April 10, 1992, the government would move to compel and/or move to dismiss.

Defendant received plaintiff's responses to the interrogatories on April, 16, 1992—99 days after they were due. Plaintiff failed, however, to provide any response to the government's document requests. On May 6, 1992, the court extended the discovery deadline to June 25, 1992. By this date, the government had still not received any responses to its document requests. On July 10, 1992, the government informed plaintiff that its responses to several of the interrogatories were insufficient and that it was still awaiting responses to the document requests. On July 22, 1992, after plaintiff informed the government that it had still not completed its responses to the discovery requests, defendant moved to compel. Later that same day, the government received plaintiff's revised answers to the interrogatories. These revisions, however, were not accompanied by any responses to the document requests. Furthermore, the revisions did not correct all the inadequacies of the prior responses.

On July 27, 1992, the court extended the discovery period until August 14, 1992 so that plaintiff could respond to the discovery requests and correct its interrogatory responses. On August 28, 1992, when the government had still received no responses, it informed plaintiff that if no response was received by September 1, 1992, it would move to dismiss. On September 4, 1992, the government moved to dismiss.

On October 8, 1992, plaintiff sent the government more revised interrogatory responses. Again the responses were not accompanied by responses to the document requests. At a status conference on November 12, 1992, plaintiff informed the court that it had not responded to the requests because no responsive documentation existed. The court then ordered Advanced America to file a letter certifying that the documents did not exist by November 30, 1992. The court also granted the government's motion to reopen discovery until February 26, 1993 and suspended consideration of the motions to compel and to dismiss until further notice.

---

1. Under RUSCFC 33(a), the party upon whom interrogatories have been served is required to respond within 30 days of service unless the parties mutually agree to a different period or the court sets a different time period.

On December 1, 1992, plaintiff filed a motion to extend the time to submit sworn statement until December 7, 1992. On December 3, 1992, plaintiff filed the sworn statement of its president certifying:

> I, Steven P. Jannings, hereby certify under oath that to the extent any documents exist that we intend to rely on, and that have been requested by the government pursuant to its interrogatories, we have furnished all said documentation. No other written documentation exists and we hereby so certify.

On January 27, 1993, the government informed plaintiff that the statement inadequately complied with the court's order because:

> The statement addresses only documents requested pursuant to the government's interrogatories; however, the statement must also certify that no documents requested in the government's *requests for production of documents* exist.
>
> The statement refers only to the plaintiff's release of documents that "we intend to rely on"; however, pursuant to the Court's order, the certified statement must address any documents that have been requested by the government, either in its interrogatories or requests for production of documents, *whether Advanced America intends to reply on them or not.*

In response, on February 18, 1993, plaintiff sent defendant a second statement:

> I, Steven P. Jannings, hereby certify under oath that to the extent any documents exist that have been requested by the government pursuant to its interrogatories or Request for Production Documents. [sic] No other written documentation exists and we hereby so certify.

On March 9 and 10, 1993, the government deposed Steven Hale, plaintiff's project manager on the contract; William Regan, plaintiff's vice-president and chief financial officer; and Steven Jannings, plaintiff's president.[2] At the deposition, Messrs. Hale, Regan, and Jannings each brought the same folder full of documents, which the government believes were responsive to their document requests. Advanced America released copies of some of the documents but not all of them, insisting upon performing a privilege review and withholding several documents. During the depositions, there was testimony that "hundreds and hundreds" more responsive documents existed in Advanced America's files and that plaintiff held documents directly responsive to many of the document requests. Advanced America has yet to produce all the responsive documents.

## DISCUSSION

This court's rules provide for an array of sanctions designed to discourage discovery abuse and to encourage the full disclosure of information prior to trial. In cases involving non-compliance with discovery orders, judges are authorized to dismiss a case in part or in its entirety:

> Rule 37(b)(2)—*Sanctions Against a Party.* If a party ... fails to obey an order to provide or permit discovery ... the court may make such orders in regard to the failure as are just and among others the following ...
>
> > (C) An order striking out the pleadings or parts thereof, or staying further proceedings unless the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;
> >
> > ...[3]

■ While courts, reluctant to deprive a party of its day in court, admonish that dismissal should be used only in extreme circumstances, *see, e.g., Hendler v. United States,* 19 Cl.Ct. 27, 30 (1989), they have also recognized that it is proper in certain instances. Indeed, the Supreme Court has noted that dismissal may be necessary as a means of both punishing a flagrantly disobe-

---

2. These three individuals were named in Advanced America's interrogatory responses as having the principal responsibility for the contract at issue.

3. Rule 41(b) of the rules also provide for dismissal in the event that plaintiff fails to prosecute or to comply with any rules of the court. Because this court has decided to sanction plaintiff under Rule 37(b), it does not need to utilize this rule.

dient litigant and deterring others from engaging in similar conduct. *See National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747.

Judges are accorded great discretion in deciding whether dismissal is warranted. *See, National Hockey League* at 642, 96 S.Ct. at 2780; *Adkins v. United States*, 816 F.2d 1580, 1580–81 (Fed.Cir. 1987). They are expected, however, to follow certain guidelines prior to dismissal. First, dismissal is only appropriate where failure to comply is due to willfulness or bad faith on the part of the litigant. *See Societe Internationale v. Rogers*, 357 U.S. 197, 212, 78 S.Ct. 1087, 1095–96, 2 L.Ed.2d 1255 (1968); *Ingalls Shipbuilding, Inc. v. United States*, 857 F.2d 1448, 1451 (Fed.Cir.1988). It would be an abuse of discretion, therefore, to dismiss a case where non-compliance is due to an inability to comply, confusion, or a misunderstanding. *See Ingalls* at 1451; *Hendler v. United States*, 19 Cl.Ct. 27, 30 (1989). Furthermore, the sanction of dismissal is appropriate only when a party refuses to follow procedural mandates. Dismissal would not be proper if its purpose were to address the merits of a case, as where one party lacks sufficient evidence to respond to discovery requests. *See Societe Internationale*, 357 U.S. at 213, 78 S.Ct. at 1096; *Ingalls* at 1451. Finally, dismissal may be imposed only after the parties are adequately warned and after the non-compliant party is afforded the opportunity to comply. *Ingalls* at 1455; *Hendler* at 31.

In addition to the above requirements, a judge is expected to consider a variety of factors before dismissing with prejudice. Among the many factors a judge may regard are: the extent to which plaintiff's dilatory tactics prejudiced the defendant; the extent of plaintiff's responsibility for the delays; and the extent to which alternative sanctions would be equally effective. *See Hendler* at 31. It may also be proper to determine the extent to which the non-compliance is due to the party himself rather than his or her attorney.

Applying these considerations to plaintiff's behavior, it is clear that dismissal is warranted. First, plaintiff's repeated failures to respond to defendant's discovery requests were willful and in bad faith. Plaintiff, having been repeatedly ordered by the court to respond to the document requests or explain why it could not do so, could not have been mistaken or confused about its obligation to respond. Furthermore, while plaintiff admitted, through the depositions of its project manager, president and vice-president, that it has in its possession hundreds of documents directly responsive to defendant's requests, it made no attempt to explain why it had previously represented that no such documentation existed. Finally, the fact that plaintiff's refusal to turn over documents continued even after the court ordered plaintiff to do so provides further support for a finding of willfulness. *See Hendler v. United States* at 31 n. 8, *citing Anderson v. Home Insurance Co.*, 724 F.2d 82, 84 (8th Cir.1983) ("Failure to provide full information after a court order constitutes willfulness or bad faith default").

Second, although the court did not itself advise plaintiff that dismissal would be forthcoming if plaintiff continued its behavior, defendant provided plaintiff with ample warning. In March of 1992, after defendant had waited for plaintiff to respond to defendant's interrogatories and requests for documents for over three and a half months, defendant advised plaintiff by writing that if defendant did not receive a response by April 10, 1992 it would move to compel and/or dismiss. In August 1992, when plaintiff had still not responded to defendant's document requests,[4] defendant again warned plaintiff that, if no response was received by September 1 defendant would move to dismiss. On September 4, 1992, after plaintiff had still not produced the requested documents, defendant moved to dismiss. In November 1992 the court suspended consideration of the government's motion in order to provide plaintiff with an opportunity to explain, under oath, why it could not provide defendant with the documents requested.

4. Plaintiff had, by this time, at least partially responded to defendant's interrogatories.

The purpose of warning a non-compliant party is to provide him or her with a final opportunity to comply prior to dismissal. *See Hendler* at 31. Although not required to satisfy due process,[5] the issuance of a warning ensures fundamental fairness to the party against whom severe sanctions, such as dismissal, are imposed. In this case, defendant's repeated warnings to plaintiff prior to dismissal, coupled with the court's suspension of defendant's motion, provided plaintiff with both a final opportunity to comply and notice of what the consequences would be if it failed to do so.

Third, plaintiff's continued refusal to provide defendant with the information requested clearly prejudiced defendant in its defense of this action. The government served on plaintiff its first set of interrogatories and requests for documents on December 6, 1991. Pursuant to Rule 33(a), plaintiff's responses were due by January 8, 1992. Plaintiff, however, did not respond to the interrogatories until April 16, 1992, and did not produce any of the requested documents until March 9, 1993.[6] Furthermore plaintiff's responses to several interrogatories were found inadequate [7] and the government was forced to wait more than four more months for plaintiff's revised replies. Finally, it appears that even today the government has not received many or even most of the requested documents.

The result of this delay has been the accumulation of unnecessary attorneys fees and the inability of defense counsel to properly prepare its case. Plaintiff filed its complaint in March of 1991 and defendant answered in July of that year. This case has been pending for over three years yet has progressed no further than the initial stage of discovery. It would be unfair to require defendant to continue to incur any further expenses and inconvenience in the face of plaintiff's continued refusal to proceed with the case.

Fourth, the court is convinced, based upon its status conferences, documents submitted by both parties, and the history of this case, that plaintiff's delay was its own responsibility and not that of its counsel. This is particularly evident in plaintiff's varied responses to defendant's document requests.

■ For almost an entire year after receiving the document requests plaintiff merely failed to respond, providing no explanation to defendant or to the court. Then, at a status conference on November 12, 1992, plaintiff's counsel informed the court, for the first time, that no responsive documentation existed. In response to the court's order requiring plaintiff to file a certified letter to this effect, plaintiff's president, on December 3, 1992, submitted an affidavit stating that plaintiff had furnished all documents requested in the government's interrogatories. By referring only to documents related to interrogatories, plaintiff's president again avoided the issue at hand: why had plaintiff not produced the documents requested in the government's requests for documents? [8]

---

**5.** Note that the notice "requirement" generally followed by this court extends beyond the parameters of the due process clause of the fifth amendment to the Constitution as interpreted by the Supreme Court. *See Link v. Wabask Railroad,* 370 U.S. 626, 632–33, 82 S.Ct. 1386, 1389–90, 8 L.Ed.2d 734 (1962) ("[W]hen circumstances make such action appropriate, a District Court may dismiss a complaint for failure to prosecute even without affording notice of its intention to do so or by providing any adversary hearing before acting"). Here, of course, oral argument was held on the government's motion to dismiss.

**6.** Even then, plaintiff's counsel would not release all responsive documents, claiming that some were protected by the attorney-client privilege. Curiously, however, plaintiff's counsel had never asserted this privilege during the entire 15–

month period that the government awaited plaintiff's responses.

**7.** For example, Interrogatory 6 requested that plaintiff:
> Identify each and every officer and employee of plaintiff who had any responsibilities or involvement with the contract. Describe in detail the nature of their respective involvement and positions as well as their duties and responsibilities regarding work related to this contract.

Although plaintiff listed the names of three people and provided their titles, it failed to describe their duties and responsibilities with respect to the contract.

**8.** Plaintiff's affidavit was also inadequate because it referred only to "documents that we intend to rely on," whereas no such limitation appeared in the court's order.

On February 18, 1993, after the government informed plaintiff that plaintiff had again failed to comply with a court order, plaintiff's president submitted another sworn statement. In this statement plaintiff's president reiterated what it had represented to the court during the November status conference: no responsive documentation existed. Less than one month later, however, when plaintiff's president, vice-president and project manager appeared for their depositions, they each brought a folder of documents. According to the government, most of these documents were directly responsive to the document requests. Furthermore, the project manager stated in response to questioning that "hundreds and hundreds" of other similar documents were in plaintiff's possession.

Incidents such as this, over which plaintiff was in full control, indicate to the court that plaintiff was directly responsible for engaging in behavior which, at a minimum was evasive and misleading and at worst constituted perjury. In either event, it is clear that this is not a case where plaintiff's attorney, rather than plaintiff itself, is at fault and the imposition of sanctions would be unfair.

Finally, the court believes that if the court were to impose sanctions less severe than dismissal, it would not serve the purposes of Rule 37. Plaintiff has demonstrated, through its repeated failures to comply, that if given another chance, it would be unlikely to obey the court's orders. Even if plaintiff were to comply with all future discovery orders, allowing plaintiff to proceed after years of disobeying the court and delaying discovery would send a message to other litigants that the court will tolerate similar misbehavior.

## CONCLUSION

For all of the reasons stated, defendant's motion to dismiss is granted. The clerk of the court is directed to dismiss this case with prejudice. Plaintiff shall bear the costs of litigation as well as the costs incurred by defendant in connection with plaintiff's failures to respond adequately to defendant's discovery requests. Defendant is ordered to submit to the court an accounting of these costs no later than 60 days from the date of issuance of this opinion.

**IT IS SO ORDERED.**