**ALASKA PULP CORPORATION,**
Plaintiff,

v.

**The UNITED STATES, Defendant.**

No. 95–153C.

United States Court of Federal Claims.

Aug. 7, 1998.

Terrence O'Donnell, Williams & Connolly, Washington, DC, for plaintiff. Ari S. Zymelman, Robert A. Van Kirk, Williams & Connolly, Washington, DC, Michael J. Lawson, Christine A. Murphy, Steefel, Levitt & Weiss, San Francisco, CA, of counsel.

Jane W. Vanneman, Civil Division, United States Department of Justice, Washington, DC, for defendant, with whom were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, Geoffrey C. Cook, Alfred S. Irving, Laureen Kapin, Paul S. Padda. Leslie Lagomarcino, Department of Agriculture, Washington, DC, Tim Obst, Department of Agriculture, Juneau, AL, of counsel.

## OPINION

MARGOLIS, Judge.

This is an action in which plaintiff Alaska Pulp Corporation ("APC") seeks over 1.2 billion dollars in damages for breach of contract and taking without just compensation by defendant United States. The case is currently before the court on defendant's motion for sanctions, including dismissal with prejudice, contempt, award of expenses, and imposition of evidentiary rulings in favor of defendant. The court must decide if any of these sanctions are warranted because APC's president and chairman of the board of directors failed to comply with this court's July 15, 1997 order to submit to a deposition.

## FACTS

APC filed its complaint on March 3, 1995. During a December 13, 1995 hearing between the parties, APC's counsel at that time, Richard Kramer, informed the court that plaintiff would soon be requesting permission to depose George Ishiyama, APC's president and chairman of the board of directors, to preserve his testimony because Ishiyama was a key witness for plaintiff and had health problems. APC's counsel said that to protect his health Ishiyama should be deposed under very precise rules in Japan, where he currently lived. During a February 29, 1996 status conference before the court, counsel for defendant, Jane Vanneman, indicated that the government would require financial information from Ishiyama and from other APC-affiliated companies before Ishiyama's deposition could effectively take place because the government believed Ishiyama's personal finances flowed into and out of APC. Furthermore, defendant's counsel said she understood that Ishiyama owned homes in California and Hawaii and therefore believed Ishiyama's deposition should take place in the United States.

Throughout 1996, the parties filed various papers pertaining to Ishiyama's deposition. From March to December 1996, plaintiff's general position was that Ishiyama should be subject only to some form of limited deposition in Japan because of his medical condition while defendant maintained that Ishiyama

was critical to its defense and should be required to come to the United States for the deposition. On November 6, 1996, defendant filed a motion requesting that Ishiyama travel to the United States to be deposed. APC's counsel informed the court, by letter dated December 24, 1996, that Ishiyama would be opposing all efforts to depose him. At a January 22, 1997 status conference, APC's new counsel of record, Terrence O'Donnell, confirmed that Ishiyama was no longer willing to submit to a deposition at any location. Consequently, on January 24, 1997, this court entered an order requiring Ishiyama to undergo a physical examination by a "qualified independent neurologist" to determine whether Ishiyama could be deposed. In response to this order, Ishiyama hired separate counsel, Jacob Stein, to request that the court rescind its order requiring him to submit to a physical examination.

On March 28, 1997, defendant filed a brief opposing Stein's representation of Ishiyama in his personal capacity and opposing Ishiyama's request that the court rescind the order for Ishiyama's physical examination. Additionally, defendant moved for the court to dismiss plaintiff's action based upon plaintiff's alleged violation of the court's September 26, 1996 discovery order or, alternatively, for evidentiary rulings in defendant's favor. Subsequently, Ishiyama requested an evidentiary hearing to determine whether he should be deposed.

On May 28, 1997, the court held a hearing at which Ishiyama was permitted individual representation regarding the court-ordered physical examination. On May 30, 1997, as a result of that hearing, the court entered an order rescinding its prior order that Ishiyama undergo a physical examination. The court found that defendant failed to establish that the requirements of Rule of Court of Federal Claims ("RCFC") 35(a), which allows for court-ordered physical examinations, had been met. Additionally, over defendant's objection, the court scheduled an evidentiary hearing to determine whether Ishiyama's medical condition should preclude defendant from deposing him.

The court held a hearing on Ishiyama's medical condition on June 25 and July 10, 1997. Both parties presented several experts who testified as to whether Ishiyama's physical condition should preclude defendant from deposing him. The court carefully weighed this medical evidence and issued an opinion on July 15, 1997. The court found that Ishiyama likely has coronary artery disease and that he suffered a minor stroke in early 1994, but that he is still very active, making 17 trips outside Japan since July 1994 and working approximately 1200 hours each year. Furthermore, the court concluded that Ishiyama is currently active in APC's policy decisions and decisions related to the present litigation, and that there was little or no evidence suggesting Ishiyama's condition had deteriorated significantly from his condition in December 1994. Balancing Ishiyama's medical problems against his active life style, frequent international travel, and active involvement in APC's affairs, the court held that Ishiyama's deposition would commence on August 11, 1997. Out of an abundance of caution for, and sensitivity to, Ishiyama's physical condition, the court required that the deposition take place in Japan where Ishiyama lived.

The court then held a status conference on July 21, 1997 to determine the protocol for the deposition. At the status conference, defendant's counsel and the court asked plaintiff's counsel if Ishiyama planned to appear for the court-ordered August 11 deposition. Plaintiff's counsel responded that he could not answer the court's question until he received the deposition protocol and presented it to Ishiyama. The court warned plaintiff's counsel that if Ishiyama did not appear for the court-ordered deposition, a possible resulting sanction would be dismissal of the suit. Plaintiff's counsel acknowledged that warning and a previous such warning from the court.

Defendant submitted a draft protocol for the deposition to the court. Neither plaintiff's counsel nor Ishiyama's counsel offered a draft protocol to be considered at the conference. When the court asked plaintiff's counsel if he had any alternative to the government's suggestion regarding the duration of the deposition, he said no. When the court posed the same question to Ishiyama's coun-

sel, he responded only that the testimony of Dr. Perlstein should be controlling.[1] Shortly thereafter, Ishiyama's counsel asked to be excused and therefore was absent for over half of the conference.

On July 23, 1997, the court issued the protocol for the Ishiyama deposition. The protocol called for seven business days of deposition with an intervening weekend during which no deposition would be taken. The deposition was to begin each day at 9:30 a.m. and proceed each hour with 45 minutes of questioning and 15 minutes of rest. The protocol provided for three 45-minute questioning periods in the morning, a two hour and 15 minute lunch and two 45-minute questioning periods in the afternoon.

Ishiyama's counsel informed plaintiff's counsel by letter, dated July 23, 1997, that Ishiyama would not attend the court-ordered deposition because of health concerns. Consequently, the court held a status conference on July 25, 1997. Although counsel for plaintiff and defendant were present, Ishiyama's counsel chose not to attend. Plaintiff's counsel represented that Ishiyama would not comply with the court's order and protocol. Pursuant to the discussion at this status conference, the court entered an order on August 5, 1997 allowing defendant to file the present motion for sanctions. By order entered September 10, 1997, the court stayed all proceedings pending resolution of this motion.

## DISCUSSION

Defendant seeks several sanctions under RCFC 37(b)(2). First, defendant seeks dismissal of this suit as a sanction for Ishiyama's alleged willful refusal to submit to a deposition and APC's alleged willful refusal to produce Ishiyama for the court-ordered deposition.[2] Second, defendant contends that this court should hold Ishiyama and

APC in contempt of court based on Ishiyama's refusal to comply with the court's order to submit to a deposition. Third, defendant seeks reimbursement for various costs, expenses, and attorneys' fees. As an alternative to the dismissal sanction, defendant seeks 271 evidentiary rulings regarding liability and damages issues.

Pursuant to RCFC 37(b)(2), this court may impose a number of sanctions when a party or an officer, director, or managing agent of a party fails to obey a discovery order or permit discovery. The court may (1) take certain facts to be established, (2) prohibit the disobedient party from opposing or supporting designated claims or introducing designated matters into evidence, (3) strike out pleadings, (4) stay further proceedings until the order is obeyed, (5) dismiss the action or any part thereof, (6) render a default judgment, (7) treat as contempt of court the failure to obey the order, and (8) award the reasonable expenses caused by the failure. *See* RCFC 37(b)(2).

### I. Dismissal

The Supreme Court of the United States has placed two basic limitations upon a court's discretion to impose sanctions under Rule 37(b)(2). The sanction must be just and must relate to the particular claims to which the discovery order was addressed. *See Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982); *Cochran Consulting, Inc. v. Uwatec USA, Inc.*, 102 F.3d 1224, 1231–32 (Fed.Cir.1996); *Morris v. United States*, 37 Fed. Cl. 207, 213 (1997). Therefore, the severity of the sanction imposed should be directly proportionate to the flagrancy of the party's behavior. *See Morris*, 37 Fed. Cl. at 213. Dismissal is considered a drastic sanction and should be reserved for only the most severe abuses of the

---

1. Dr. Perlstein testified that Ishiyama could tolerate a single half-day deposition.

2. Defendant also seeks dismissal under RCFC 41(b), which provides for dismissal where a plaintiff has failed to prosecute or to comply with an order of the court. The court concludes, however, that RCFC 37(b) is more applicable to this case. *See Societe Internationale Pour Participations Industrielles et Commerciales v. Rogers,*

357 U.S. 197, 207, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958) ("[W]hether a court has power to dismiss a complaint because of noncompliance with a production order depends exclusively upon Rule 37, which addresses itself with particularity to the consequences of a failure to make discovery by listing a variety of remedies which a court may employ....").

discovery process. *See Hendler v. United States,* 952 F.2d 1364, 1382 (Fed.Cir.1991); *Ingalls Shipbuilding, Inc. v. United States,* 857 F.2d 1448, 1451 (Fed.Cir.1988); *Applegate v. United States,* 35 Fed. Cl. 47, 56–57 (1996). A court may only impose such a drastic sanction when the failure to comply is attributable to willfulness, bad faith, or fault. *See Societe Internationale,* 357 U.S. at 212, 78 S.Ct. 1087; *Hendler,* 952 F.2d at 1382; *Ingalls Shipbuilding,* 857 F.2d at 1451; *Applegate,* 35 Fed. Cl. at 57; *Advanced Am. Serv., Inc. v. United States,* 32 Fed. Cl. 191, 194 (1994). Dismissal is not warranted where the failure to comply is due to inability, confusion, or sincere misunderstanding of a court's orders. *See Hendler,* 952 F.2d at 1382; *Ingalls Shipbuilding,* 857 F.2d at 1451; *Adkins v. United States,* 816 F.2d 1580, 1582 (Fed.Cir.1987); *Applegate,* 35 Fed. Cl. at 57; *Advanced Am. Serv.,* 32 Fed. Cl. at 194.

■ In deciding whether to dismiss a case with prejudice under Rule 37(b)(2), courts consider several factors in addition to determining if the failure to comply with the court's order is attributable to wilfulness, bad faith, or fault. For example, courts consider (1) the prejudice to the moving party caused by the nonmoving party's failure, (2) the public's interest in expeditious resolution of litigation, (3) the court's need to manage its docket, (4) the public policy favoring disposition of cases on the merits, (5) the effectiveness of less drastic sanctions, (6) whether the non-moving party received warnings that failure to cooperate could lead to dismissal, (7) the extent of the party's personal responsibility, and (8) the history of dilatoriness. *See Payne v. Exxon Corp.,* 121 F.3d 503, 507 (9th Cir.1997); *Estate of Spear v. Commissioner,* 41 F.3d 103, 109 (3d Cir.1994); *Hyde & Drath v. Baker,* 24 F.3d 1162, 1166 (9th Cir.1994); *FDIC v. Conner,* 20 F.3d 1376, 1380–81 (5th Cir.1994); *Wexell v. Komar Indus.,* 18 F.3d 916, 920 (Fed.Cir.1994); *Ehrenhaus v. Reynolds,* 965 F.2d 916, 921 (10th Cir.1992); *Refac Int'l, Ltd. v. Hitachi, Ltd.,* 921 F.2d 1247, 1254 (Fed.Cir.1990); *Advanced Am. Serv.,* 32 Fed. Cl. at 194.

The first factor mentioned above, prejudice to the moving party, is particularly significant to the resolution of the present motion

to dismiss. The Federal Circuit has stated, as have other circuits, that it is material whether the demanded discovery is necessary to the moving party's case and, if so, whether there are alternative sources for the necessary information. *See Cochran Consulting,* 102 F.3d at 1231 (finding that it would be an abuse of discretion to impose a serious sanction upon a party for being unable to provide a document that is not necessary to the case); *see also Founding Church of Scientology, Inc. v. Webster,* 802 F.2d 1448, 1459 (D.C.Cir.1986) (noting that if defendants had been able to secure the information they sought from an alternative source, the sanction of dismissal would have been less clearly appropriate). The prejudice factor looks to whether the nonmoving party's actions will interfere with the rightful decision of the case. *See Estate of Spear,* 41 F.3d at 115; *Hyde & Drath,* 24 F.3d at 1166–67; *Wiltec Guam, Inc. v. Kahaluu Constr. Co.,* 857 F.2d 600, 604 (9th Cir.1988); *Hicks v. Feeney,* 124 F.R.D. 79, 82 (D.Del.1987), *aff'd,* 850 F.2d 152 (3d Cir.1988); *see also Ehrenhaus,* 965 F.2d at 921 (noting that delay alone is not the type of prejudice that warrants dismissal); *Ingalls Shipbuilding,* 857 F.2d at 1452–53 (finding no real prejudice where discovery remained open at the time sanctions were requested because the necessary information could still be pursued); *FDIC v. Conner,* 20 F.3d at 1381 (same).

■ In the present case, it appears that Ishiyama wilfully failed to comply with this court's July 15, 1997 order to appear for a deposition pursuant to the protocol issued July 23, 1997. The court is extremely displeased with Ishiyama's defiance of its authority. However, in light of the applicable case law and in the interests of justice, the court must also consider whether Ishiyama's failure to appear for the court-ordered deposition will substantially prejudice the government by interfering with the rightful decision of the case. Fairness dictates that outcome determinative sanctions be reserved for violations of court orders that could affect the outcome of the case. *See Estate of Spear,* 41 F.3d at 115 ("[T]he basic thrust of the Supreme Court jurisprudence is that sanctions that effect [sic] the outcome of the trial

should only be imposed in order to compensate for violations that may plausibly be thought likely to affect the outcome of the trial.") After reviewing plaintiff's declarations from potential alternative sources of information and defendant's responses to those declarations, and in light of the fact that defendant has only taken two depositions thus far and that defendant can obtain some information from Ishiyama through a 15–hour videotaped RCFC 31 deposition by written questions, the court cannot conclude, at this time, that Ishiyama's oral deposition is so essential to the government's defense that Ishiyama's refusal to make himself available for an oral deposition will interfere with the rightful decision of this case.[3] Therefore, the court is not prepared, at this time, to impose the drastic sanction of dismissal, or impose its equivalent, namely the 271 evidentiary rulings requested by defendant.

There may come a time in this case, however, after defendant has completed most or all of its discovery, including a Rule 31 deposition by written questions of Ishiyama, when defendant will be able to establish that without Ishiyama's oral deposition it is substantially prejudiced. Should this case reach that point, defendant will be entitled to renew its motion for sanctions, including dismissal and evidentiary rulings. The court must emphasize that it will not entertain another motion for dismissal as a sanction until defendant explores its other avenues of discovery, including depositions of other significant witnesses and the Rule 31 deposition by written questions of Ishiyama.

## II. Contempt

■ Defendant has also moved to hold Ishiyama in contempt of court for his failure to comply with this court's order to submit to a deposition. Before a court may make a finding of contempt and impose contempt sanctions, due process requires that the person charged with civil contempt be given notice and a hearing so that he may have the opportunity to explain the conduct deemed deficient. *See International Union, United Mine Workers v. Bagwell,* 512 U.S. 821, 826,

114 S.Ct. 2552, 129 L.Ed.2d 642 (1994); *Harris v. City of Philadelphia,* 47 F.3d 1311, 1322 (3d Cir.1995); *Schoenberg v. Shapolsky Publishers, Inc.,* 971 F.2d 926, 934–35 (2d Cir.1992). For an indirect contempt, such as failure to obey a court order, it is appropriate to give notice by an order to show cause. *See Harris,* 47 F.3d at 1322.

The court is considering holding Ishiyama in civil contempt for his failure to comply with this court's order to appear for deposition. Therefore, the court will issue an order for Ishiyama to show cause why he should not be held in contempt for his failure to comply with this court's July 15, 1997 order in this case. Ishiyama will have the opportunity to submit a brief on his behalf and appear before the court through counsel at a contempt hearing. Defendant shall have the opportunity to respond to Ishiyama's arguments in writing and at the hearing.

## III. Costs, Expenses, and Attorneys' Fees

■ Finally, as a Rule 37(b)(2) sanction, defendant seeks all expenses incurred to litigate this case, including the expenses associated with the present motion. As of September 18, 1997, these expenses totaled $3,584,909.50. Alternatively defendant seeks certain categories of what it calls "excessive costs." Under Rule 37(b)(2), however, this court may only order plaintiff to pay the reasonable expenses, including attorneys' fees, caused by Ishiyama's failure to comply with the order to submit to a deposition. *See* RCFC 37(b)(2); *Turnbull v. Wilcken,* 893 F.2d 256, 259 (10th Cir.1990); *In re Summit Corp.,* 891 F.2d 1, 7 (1st Cir.1989); *Toth v. Trans World Airlines, Inc.,* 862 F.2d 1381, 1386 (9th Cir.1988); *Liew v. Breen,* 640 F.2d 1046, 1051 (9th Cir.1981). The court may not award the expenses resulting from efforts to secure the order compelling Ishiyama to submit to a deposition or any other expenses incurred prior to the issuance of the court order because they are not expenses incurred on account of Ishiyama's failure to obey the order. *See Turnbull,* 893 F.2d at 259; *Toth,* 862 F.2d at 1386 (holding that the district court abused its discretion

---

**3.** During the briefing of this motion for sanctions, plaintiff offered to make Ishiyama available for a RCFC 31 deposition by written questions in Cairns, Australia.

to the extent that it awarded expenses that were not incurred as a result of plaintiff disobeying the court's order); *Liew,* 640 F.2d at 1051. Under Rule 37(b)(2), this court may only award the reasonable expenses incurred in bringing this motion for sanctions, including any expenses related to the upcoming contempt hearing.

The court does not find the failure to comply with its July 15, 1997 order substantially justified. The court concludes, therefore, that ordering APC to pay defendant's reasonable expenses, including attorneys' fees, incurred in bringing the present motion is an appropriate sanction for APC's failure to produce its president and chairman of the board of directors for deposition. Therefore, following the upcoming contempt hearing, defendant must submit to the court the total amount of expenses it incurred in bringing this motion for sanctions and any expenses related to the contempt hearing. At that time, defendant should also submit supporting documentation for its expenses, including sworn affidavits detailing the number of hours worked and the type of work performed on the present motion and the contempt hearing, the prevailing market rate for those services, and support for any other expenses incurred. Plaintiff will have the opportunity to file a response to defendant's submission regarding the expenses, and defendant may reply.

## CONCLUSION

For the foregoing reasons, defendant's supplemental motion to dismiss with prejudice and/or for contempt sanctions and/or for other relief is granted-in-part and denied-in-part without prejudice.