Don and Gayle APPLEGATE, et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 92–832L.

United States Court of Federal Claims.

Feb. 29, 1996.

Gordon H. Harris, Cocoa Beach, FL, for plaintiffs. Jack A. Kirschenbaum and J. Mason Williams, Gray, Harris, Robinson, Kirschenbaum & Peeples, of counsel.

Lewis S. Wiener, Washington, DC, with whom was Assistant Attorney General Lois J. Schiffer, for defendant.

## OPINION

MILLER, Judge.

This case is before the court after full briefing on Defendant's Motion To Dismiss Plaintiffs and Issues. To be decided is whether plaintiffs' failure to comply with defendant's discovery requests, in light of the court's orders directing compliance, warrants dismissal of plaintiffs and issues.

## FACTS

The facts pertinent to defendant's motion are gleaned from published and unpublished orders and opinions of the court, the parties' motions, and transcripts of court proceedings over a four-year period. This summary is set forth solely to resolve the pending motion and does not constitute findings of fact for purposes of liability or damages.

Defendant's motion was filed per instructions included in an order issued on August 18, 1995. That order stated: "Should defendant still have incomplete or insufficient information regarding any plaintiff's claim, on or before December 15, 1995, defendant shall file a motion to dismiss plaintiffs and/or issues from this action based on plaintiffs' failure to provide information necessary to defend this action." *Applegate v. United States,* No. 92–832L ¶ 3 (Fed.Cl. Aug. 18, 1995) (order granting defendant's motion to compel). Based on a perception of continued non-compliance with the court's orders on discovery, defendant filed its motion.

This case is a constitutional takings case first filed in 1992. Plaintiffs allege that actions by the Army Corps of Engineers (the "Corps") have led to the loss of value and use of their beachfront property in the Cape Canaveral, Florida area. The size of the case has grown by leaps and bounds and now encompasses well over 300 plaintiffs and more than 300 parcels of land. The case involves complicated legal issues underlying both liability and damages.

Defendant first served interrogatories and document production requests on plaintiffs on January 11, 1995. Plaintiffs' discovery responses were due on February 13, 1995. Defendant received plaintiffs' objections on February 15, 1995. After an informal attempt to resolve the dispute, and with no resolution in sight, defendant filed its motion to compel on February 24, 1995, contending that plaintiffs refused to provide information regarding location of properties, interests held by each owner, identity of each person holding an interest, and the price paid for each property. Specifically, defendant argued that plaintiffs failed to answer defen-

dant's Interrogatory No. 8, which states: "For each Plaintiff, identify the amount of property that has been lost or taken since each Plaintiff purchased the property identified in Interrogatory No. 3. Attach copies of all documents relative to the response noted in your answer."

During a status conference on February 27, 1995, defendant's discovery requests and motion to compel were discussed. Although plaintiffs had not responded to defendant's discovery requests, the court had basic knowledge of plaintiffs' arguments since copies of plaintiffs' objections and responses were appended to defendant's motion to compel. The court characterized plaintiffs' objections as "flimsy ... [and] totally without merit." Transcript of Proceedings, *Applegate v. United States,* No. 92–832L at 7 (Fed.Cl. Mar. 21, 1995) (hereinafter "Tr."). Defendant's discovery requests were "so basic to any takings jurisdiction ... [and] of a very modest scope. It is absolutely essential to determine whether each plaintiff should even be in this court." *Id.* at 16. The court concluded that "[b]ased on the objections to the documentary requests and the interrogatories that I have read, I can see no basis to oppose this motion." *Id.* at 17.

Subsequently, by order dated February 27, 1995, the court bifurcated trial and directed plaintiffs to respond to defendant's discovery requests:

1. On plaintiffs' request and pursuant to RCFC 42(c), trial will be limited to the issues of law and fact relating to the right of plaintiffs to recover, reserving the determination of the amount of recovery, if any, to further proceedings. However, discovery, including depositions, shall proceed with respect to all issues, excluding discovery relating to expert valuation (damages) reports and testimony.

. . . .

9. Pursuant to RCFC 77.1(a) and (b)(2), and having heard counsel during the status conference with respect thereto, the court deems that the advancement of the case is facilitated by ruling on Defendant's Motion ... without awaiting a written response from plaintiffs. The court makes its ruling principally based on the objec-

tions that plaintiffs served with respect to defendant's January 11, 1995 discovery requests. These objections are unfounded in fact or law for the reasons stated in defendant's motion. . . .

*Applegate v. United States,* No. 92–832L, ¶¶ 1, 9 (Fed.Cl. Feb. 27, 1995). Plaintiffs thereby were ordered to respond to defendant's discovery requests by March 20, 1995. The court awarded defense counsel fees and costs on its motion.

In March 1995 plaintiffs responded to defendant's Interrogatory No. 8, requesting identification of properties allegedly taken from each plaintiff, with the following answer for each plaintiff:

The amount of property lost or taken from Plaintiffs as alleged in the Complaint is equal to the difference between the mean high water line in October 1951 and the mean high water line today. Further, in addition to damages suffered as a result of the loss of Plaintiffs' property by the encroachment of the mean high water line, additional property has been washed away and lost due to erosion. Finally, erosion has caused the State Coastal Construction Control Line to be moved westward, further damaging and impairing Plaintiffs' valuable property rights by the imposition of severe regulatory restraints. All of the above losses and damages constitute a constitutional taking of valuable property rights.

The parties convened for another status conference on April 28, 1995, to discuss discovery matters and establish a protocol to ease the burden of litigating multiple claims. Issues arose regarding the extent to which plaintiffs were required to provide information on the damages sustained by each individual plaintiff. Defendant contended that plaintiffs had supplied "no information about any one plaintiff, or any group of plaintiff's [sic] damages." Tr. at 31 (Fed.Cl. May 25, 1995). Defense counsel took the position that the Government was "entitled to know what plaintiffs have lost. They cannot credibly maintain that each plaintiff has lost the same damage—or incurred the same damage. . . . I need to know and I think I'm entitled to know what plaintiffs have lost."

*Id.* at 32. Plaintiffs' counsel offered that, towards satisfying defendant's discovery requests, "I do believe quite sincerely that with the proper amount of work and some motion practice that we will actually fall upon a sort of rule of thumb formula to which you plug in the variances of each of these individual pieces of properties which will render us some pretty good ballpark figures on what the losses are." *Id.* at 40. Defendant rejoined that any response based on application of a formula to the individual properties was unhelpful and of no greater significance or insight than responses previously received. Plaintiffs responded that "damages are a component of how much land has been lost" and therefore outside of the scope of discovery required for the bifurcated issue of liability. *Id.* at 44.

In order to resolve the dispute and clarify the type of information required to satisfy defendant's requests, the court instructed plaintiffs:

> THE COURT: [W]e need to know the nature of the kind of damage that you are complaining of[,] the amount of land taken by flooding, the amount of land taken by any other cause of erosive activities and what you attribute those to[,] and the affect of any property line in the state of Florida and so forth, and who caused any damage due to any adjustments and that. And these should be quantified, in terms of cubic [feet] of land. If you're talking about depth, or square feet, if you're talking about the surface, as far as putting a dollar value to it for purposes of valuation, no. You don't have to do that now, but the rest of it you do have to do, and that will be by July 3rd.
>
> Plaintiff[s] shouldn't be in court unless they know that their land was damaged and have a reasonable ability to articulate in what way it was damaged and how much of the land was damaged. Usually we're talking about square feet, and it shouldn't be that hard to articulate. After all the discussion we've had since February, all the warnings in the discovery orders that I've issued.
>
> If the Government gets back this kind of response the Government's going to move

for sanctions. And the second time around, we'll be dismissing some claims, we're going to have to. So, don't let that happen.

*Id.* at 47–48. The court warned plaintiffs to avoid formulaic "boiler plate" calculations because "each plaintiff ... own[s] different size parcels. So, obviously, if we start getting the same answer, we're in a situation where you're [defendant is] going to have to invoke the aid of the Court." *Id.* at 49. As a final admonition to plaintiffs, the court directly ordered plaintiffs' counsel to "be responsive to [a] very reasonable discovery request ... that's your mandate." *Id.* at 50.

On May 2, 1995, plaintiffs moved for an extension of time to respond to defendant's original discovery requests. Defendant opposed the motion in light of defendant's previous motion to compel and the court's February 27, 1995 order. By order entered on May 10, 1995, the court directed plaintiffs to respond to defendant's outstanding discovery requests by June 15, 1995.

A status conference was held on June 22, 1995, for the primary purpose of finalizing the protocol for test plaintiffs. The parties additionally discussed plaintiffs' compliance with the February 27, 1995 order requiring plaintiffs to respond to defendant's outstanding discovery requests. Defense counsel advised that he had not received the full request, asserting that "the transcript of that [February 27, 1995] hearing is replete with references made by the Court to the effect that we could obtain discovery on the damages issue, but not valuation issues. All of the queries that have been asked by Defendant in this case on discovery have related to what Plaintiffs lost. Stated otherwise, what Defendant has taken." Tr. at 5 (Fed.Cl. July 24, 1995). Plaintiffs requested "a specific clarification" of the February 27, 1995 order, to which the court responded "[t]hat order does not need to be clarified." *Id.* at 6–7.

During this status conference, defendant was advised, in response to entreaties regarding the proposed protocol, as follows:

> THE COURT: You are going to get the discovery, to which you are entitled. It will be very untimely. If you offered Plaintiffs a further indulgence in allowing

them a further corrective period, we could solve this a lot easier. And we will go through that. So they will have more than ample opportunity to put forth appropriate information you asked for. And when you evaluate it, if you find it wanting, you can let me know. Plaintiffs will have an opportunity to respond. And we will start removing individuals from this case based on failure to respond to a proper discovery request.

*Id.* at 13. In response to plaintiffs' statements about the scope of discovery, the court sought to further explain the effects of bifurcation:

THE COURT: We had an extensive discussion before I entered the February 27, 1995 order. Paragraph one could not be more clear. And the whole purpose of bifurcation is to avoid putting the parties to the expense and time of preparing should the Court find no liability with respect to the alleged taking.

However, I found in the past that a total bifurcation of discovery is not productive. With the exception of the expert valuation, or damage reports, or testimony, discovery will proceed on all issues, as I ordered lo these many months ago. And that is exactly what was bifurcated, and it will remain bifurcated.

[PLAINTIFFS]: Your Honor, that is my understanding. What you have just said is my understanding. But what I heard you say that may have been my ears and not your voice, but what I heard you say—

THE COURT: I am more interested at this point in what I wrote down in paragraph one of the February 27, 1995 order, which was written after extensive consultation with both sides. And it is very, very clear. And you are at your peril in misinterpreting that, if you are not giving ... [defense counsel] the discovery responses to which he is entitled.

*Id.* at 16–17.

On June 23, 1995, the court entered an Order on Protocol and Schedule for Proceedings. Contained in the order were specific instructions regarding discovery of damages to plaintiffs:

7.1) Plaintiffs' responses to defendant's January 11, 1995 discovery requests regarding the amount of property and injury incurred by each plaintiff are due on July 3, 1995. At that same time, plaintiffs are to identify the mean high-water line on the date each plaintiff acquired that party's respective property interest. By that time plaintiffs should have provided to defendant all information requested by defendant in its January 11, 1995 discovery requests.

 . . . .

7.4) On or before July 31, 1995, defendant shall inform plaintiffs of those parties for which it has received incomplete or insufficient responses to defendant's January 11, 1995 discovery requests. By August 31, 1995, plaintiffs shall provide defendant with supplemental information or propose a timetable within which such information shall be provided. Should defendant still have incomplete or insufficient information regarding any plaintiff's claim, defendant shall file on or before September 15, 1995, a motion to dismiss plaintiffs and/or issues from this action based on plaintiffs' failure to provide information necessary to defend this action.

*Applegate v. United States,* No. 92–832L at 2 (Fed.Cl. June 23, 1995).

Defendant filed its second motion to compel on July 11, 1995. Defendant asserted:

Despite this Court's numerous unambiguous instructions and warnings to Plaintiffs regarding the sufficiency of their discovery responses and, specifically, those responses relating to Plaintiffs' property damages, Plaintiffs' Responses still do not identify with sufficient precision to permit the government to prepare its defense [as to] the property that the government has allegedly taken from each Plaintiff. Specifically, Plaintiffs' Responses explicitly exclude any description or calculation of property loss due to dune and bluff erosion, which, according to Plaintiffs, are significant elements of their takings claim. Moreover, despite this Court['s] specific instruction during the April 28, 1995 and June 22, 1995 status conferences, Plaintiffs

have failed to specifically identify and supplement their prior inadequate response regarding property damage attributable to the State's movement of the Coastal Construction Control line.

Def's Br. filed July 11, 1995, at 2 (footnote omitted).

Three days later plaintiffs moved for a protective order seeking relief from allegedly burdensome and unnecessary discovery requests regarding "dune and bluff losses to Plaintiffs' property above Mean High Tide" and "damages resulting from the Coastal Construction Control Line." Plfs' Br. filed July 14, 1995, at 4. Plaintiffs sought to preclude discovery of such information, arguing that 1) the information sought was beyond that required after bifurcation of the trial, and 2) the discovery requests required extremely expensive evaluations. Plaintiffs concluded that they

> have provided and can provide this Court with expert testimony and opinions showing that the Mean High Tide has moved landward for Plaintiffs' property and/or dune and bluff erosion above Mean High Tide has occurred to every Plaintiffs' property due to actions of the United States Government. The exact quantification of all those damages, and the enormous effort to achieve that exact quantification, can and should await the determination of liability in this case.

*Id.* at 8–9.

The continuing dispute over the specifics of discovery led the court to issue an extensive order on the matter on August 18, 1995, quoted at length below. The court summarized the parties' dispute, as follows:

> [D]efendant avers that plaintiffs' responses to date fail to include any description or calculation of property loss due to dune and bluff erosion, which, according to plaintiffs, comprises a significant part of their takings claim. Defendant also takes issue with plaintiffs' failure to adequately identify property loss attributable to the state's movement of the Coastal Construction Control Line. In response plaintiffs sought a protective order on July 14, 1995. Plaintiffs contend that the information sought by defendant relates to damages

and thus is precluded by this court's order entered on February 27, 1995, bifurcating at trial damages and liability issues. Plaintiffs further assert that the information sought by defendant imposes an unfair and prohibitively expensive burden.

*Applegate v. United States,* No. 92–832L at 1 (Fed.Cl. Aug. 18, 1995) (order granting defendant's motion to compel). Following a summary of the parties' disputes to date, including citations to the parties' briefs and quotations from status conferences, the court concluded:

> Plaintiffs misunderstand the nature both of defendant's discovery requests and this court's explicit orders concerning those requests. Defendant reasonably seeks to discover the physical extent of properties allegedly taken. Plaintiffs respond that they are not obligated at this point to determine, let alone disclose, the subject properties' monetary value as a measure of damages. While it is difficult to determine the source of plaintiffs' confusion, the court is convinced that it cannot be solely attributable to counsel's failure to understand the proceedings to date. Defendant is entitled to obtain from plaintiffs information related to the quantum of property allegedly taken by the Government. Such information plays an integral role in a determination of liability in those takings claims, such as plaintiffs', which are predicated upon allegations of physical occupation or invasion. Plaintiffs' reliance on this court's order bifurcating liability and damages issues at trial is specious, as is plaintiffs' belated argument, seven months after defendant's initial discovery requests, three months after the last status conference, and one month after the July 3, 1995 deadline, that a response to these requests is prohibitively burdensome.

*Id.* at 3–4. Paragraph 2 of the August 18, 1995 order directed plaintiffs to comply with defendant's discovery requests "for information concerning the physical extent of dune and bluff erosion on the subject properties, as well as information concerning the physical extent of property loss resulting from the state's movement of the Coastal Construction Control Line." In the event that plaintiffs'

failed to supply the information necessary to defend the action by December 15, 1995, defendant was instructed to file a motion to dismiss plaintiffs and/or issues.

On September 1, 1995, plaintiffs moved for reconsideration of the court's August 18, 1995 order. Plaintiffs' motion was denied by an order entered on September 22, 1995, for two reasons. First, plaintiffs offered affidavits and other materials with their motion that had not been included in previous motions or brought to the court's attention prior to issuance of the August 18 order. The court concluded that "despite plaintiffs' belief that the court's decision is misinformed and that a more meaningful or valid decision would issue if the court were to consider the affidavits and other information submitted with their motion for reconsideration, plaintiffs have failed to provide justification for the relief sought at this late date." *Applegate v. United States*, No. 92–832L at 1 (Fed.Cl. Sept. 22, 1995) (order denying motion for reconsideration). Second, the court refused to entertain plaintiffs' notions that they have received unfavorable rulings because counsel has " 'been ineffective in educating the Court' " or because the " 'Court suspects that many of the plaintiffs ... [should] be dismissed.' " *Id.* at 2.

Some ten months after defendant served its discovery requests, plaintiffs notified the court of "compliance with the Court Order Dated August 18, 1995 concerning the physical extent of dune and bluff erosion on the subject properties, as well as information concerning the physical extent of property loss resulting from the State's movement of the Coastal Construction Control Line." Accompanying plaintiffs' response was an extensive chart which was provided to defendant as compliance with the discovery requests. The chart included each plaintiff's individual number, name, jurisdiction, date of purchase, frontage feet, tax identification number, description of damages, preliminary estimates of economic loss, and a calculation for "dune & bluff loss" since 1950 and since purchase. Certain descriptions of losses were listed as "unknown." Defendant argues in its motion to dismiss that the chart was constructed using mathematical calculations of losses and "based solely on the as-

sumption that fixed volumetric sand loss is proportionally related to every foot of beachfront property," Def's Br. filed Dec. 22, 1995, at 6, a conclusion that by its very nature cannot represent actual and specific losses.

Pursuant to the court's August 18, 1995 order, plaintiffs and defendant submitted on December 22, 1995, a Joint Status Report concerning plaintiffs' compliance, presenting diametrically opposing views as to whether plaintiffs had complied with ¶ 2 of that order. On December 22, 1995, pursuant to the August 18 order, defendant filed its Motion To Dismiss Plaintiffs and Issues.

## DISCUSSION

Although this case is now almost four years old, the parties have yet to advance beyond discovery. One proposed trial schedule has evaporated, and no future date is yet in sight. The most recent obstacle to progress is the discovery dispute at issue in this opinion, which simmered for 13 months and has now come to a boil. The advocacy on this motion, and others before the court, regrettably has become increasingly accusatory, rather than instructive. By this opinion the court intends to craft a final solution to the problem of plaintiffs' responses to defendant's request for information about the extent of damage to each plaintiff's property in order to move the litigation forward with appropriate speed. This case will not be further delayed and will reach a conclusion either through progress or dismissal.

### 1. *Defendant's motion*

Defendant argues that plaintiffs' responses are unsatisfactory and in violation of the court's orders on the matter. Specifically, defendant asserts that the court's discovery orders "require Plaintiffs to provide the United States with information regarding the actual and specific losses incurred on each parcel," Def's Br. filed Dec. 22, 1995, at 2, and that plaintiffs were not permitted to provide expert opinions and estimates of loss. According to defendant, plaintiffs' final answer to defendant's Interrogatory No. 8 is inadequate for three reasons: 1) Plaintiffs'

assertions of losses due to dune and bluff erosion are based on formulaic calculations and therefore do not reflect actual and specific losses; 2) plaintiffs' claims for losses attributable to the Inlet are labeled "estimates;" and 3) plaintiffs openly admit no physical losses due to movement of the Coastal Construction Control Line (the "CCCL"), allege no other losses, and therefore allege no loss at all.

Plaintiffs responded that defendant's motion was a "misinterpretation of this Court's Order of August 18, 1995 ... and a mischaracterization of Plaintiffs' compliance therewith," Plfs' Br. filed Jan. 11, 1996, at 1. Plaintiffs argue that "[d]efendant has not attacked the completeness or the sufficiency of Plaintiffs' answers, but rather the credibility of the answers." *Id.* at 3. According to plaintiffs, the use of expert testimony to establish dune and bluff erosion is proper under the law and within the guidance of the court's orders, defendant's motion is based more on disagreement with expert conclusions than insufficiency of compliance, and defendant is attempting to exclude all expert opinions on losses. Plaintiffs also reiterated that no physical property loss occurred due to movement of the CCCL.

Throughout this discovery dispute, the court has attempted to provide guidelines as to what information defendant is entitled to and by what methods plaintiffs must provide such information. After three status conferences, two motions, and four orders, the court must conclude that plaintiffs continue to manifest a disturbing lack of cognizance of their discovery responsibilities. Whether the legal postures taken by plaintiffs' counsel constitute willful disobedience of court orders, and thus unacceptable and sanctionable gamesmanship at their clients' expense, may eventually be determinative in this case. Procedural and semantic gamesmanship by a party or a party's attorney amounts to an intolerable abuse of the judicial process, a waste of the resources of the parties and the court, and justifiably can result in dismissal with prejudice. *See, e.g., Colt Indus. Operating Corp. v. Index–Werke K.G.,* 739 F.2d 622, 623–24 (Fed.Cir.1984).

Plaintiffs' response to defendant's motion manifests a profound misunderstanding of their discovery burden, the court's orders, defendant's arguments, and applicable case law. Contrary to plaintiffs' assertions, defendant's motion does not reflect a mere difference in opinion between experts, but, rather, questions the use of an expert formula to allege specific losses as required in a takings case. Plaintiffs' arguments regarding the admissibility of expert opinions for damages and valuation purposes, while possibly legally correct, are irrelevant, since, at this point, no showing has been made that the actual extent of loss to each affected property can be ascertained.

Defendant's Interrogatory No. 8 asked for "the amount of property that has been lost or taken since each Plaintiff purchased the property...." The court long ago characterized that request as "so basic to any takings jurisdiction ... [and] of a very modest scope," Tr. at 16 (Fed.Cl. Mar. 21, 1995), and plaintiffs' objections as "flimsy ... [and] totally without merit." *Id.* at 7. Two subsequent status conferences were held on April 28, 1995, and June 22, 1995, during which plaintiffs again were advised that their discovery responses were inadequate. Plaintiffs' noncompliance twice has caused defense counsel to move to compel. Plaintiffs have been instructed four times by order—on February 27, June 23, August 18, and September 22, 1995—to provide defendant with the amount of property allegedly taken. Plaintiffs also were given specific warnings at the April 28 and June 22, 1995 status conferences and in the June 23 and August 18, 1995 orders that continued failure to comply with defendant's discovery requests would result in dismissal of some claims.

In light of the extensive attention, instructions, and warnings that the court has dispensed during this dispute, plaintiffs should be well aware of their responsibilities to provide discovery. Although plaintiffs specifically asked the court to allow use of expert opinion to satisfy defendant's discovery requests by providing "expert opinions as to the nature of damages suffered by all Plaintiffs and to opine that all Plaintiffs have suffered such damages," Plfs' Br. filed July

14, 1995, ¶ 5, their motion was denied by the August 18, 1995 order, and plaintiffs were instructed to supply information on the actual and specific losses suffered by each plaintiff.

■ Even if compliance with the discovery request may require an extensive and difficult undertaking, it is an elemental notion of takings law that plaintiffs must be able to articulate the nature of their losses. The requirement that plaintiffs provide actual and specific information, rather than estimates based on broad application of mathematical calculations, has long been known by plaintiffs. Plaintiffs' use of estimates derived through expert opinions amounts to a wasted effort and is useless to defendant at this juncture. Their formula for loss still fails to quantify actual and specific losses for any individual plaintiff.

■ Thirteen months after first requesting plaintiffs to state their losses due to dune and bluff erosion, defendant has yet to be given any specific calculation with respect to even one plaintiff. The conceptually simple act of measurement of the individual lands has never been taken. Similarly, plaintiffs now contend that no physical losses have been sustained due to movement of the CCCL. While constitutional takings law does not require a physical taking of property, it does require some form of taking. Plaintiffs must allege some taking due to movement of the CCCL, perhaps a loss of all economic use, or their claims in this regard should have been dismissed long ago. Plaintiffs therefore have failed wholly to satisfy defendant's Interrogatory No. 8. The course of avoidance of the court's orders requiring compliance with defendant's discovery request has been taken by plaintiffs at their peril.

2. *Sanctions for willful disobedience of order requiring discovery*

To combat abuse of the discovery system, RCFC 37 provides an arsenal of discovery sanctions designed to discourage delay, waste of resources, and dilatory practices in favor of full disclosure of relevant information prior to trial. Under RCFC 37(b)(2), "[i]f a party ... fails to obey an order to provide or permit discovery ... the court may make such orders in regard to the failure as are just...." Such orders include "staying further proceedings unless the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party." RCFC 37(b)(2)(C); *see, e.g., Roadway Express, Inc. v. Piper,* 447 U.S. 752, 763, 100 S.Ct. 2455, 2462, 65 L.Ed.2d 488 (1980); *Wright v. United States,* 728 F.2d 1459, 1460 (Fed.Cir.), *cert. denied,* 469 U.S. 844, 105 S.Ct. 153, 83 L.Ed.2d 90 (1984). The rules also allow the court to require "the party failing to obey the order or the attorney advising such party or both to pay the reasonable expenses, including attorneys' fees, caused by the failure...." RCFC 37(b)(2).

■ The decision whether to impose discovery sanctions, including dismissal or costs, rests within the sound discretion of this court. *Adkins v. United States,* 816 F.2d 1580, 1581–82 (Fed.Cir.1987); *see also Heat & Control, Inc. v. Hester Indus., Inc.,* 785 F.2d 1017, 1022 (Fed.Cir.1986). A court holds very broad inherent and implied powers to manage a case. *Chambers v. NASCO,* 501 U.S. 32, 43, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991). Although this court retains great latitude to impose sanctions, such discretion is not unfettered, especially when the result of the sanction is dismissal. *See, e.g., Ingalls Shipbuilding, Inc. v. United States,* 857 F.2d 1448, 1451 (Fed.Cir.1988). The Supreme Court has noted that "there are constitutional limitations upon the power of courts, even in aid of their own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause." *Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers,* 357 U.S. 197, 209, 78 S.Ct. 1087, 1094, 2 L.Ed.2d 1255 (1958). Accordingly, "dismissal is a drastic action to be used only when clearly authorized, as in a case of wilful non-compliance with an order." *Mancon Liquidating Corp. v. United States,* 210 Ct.Cl. 695, 696 (1976).

■ The sanction of dismissal is ordinarily "applied in those cases where a party is explicitly ordered by the court to provide

discovery but the party fails to respond in a proper or timely manner." *Adkins,* 816 F.2d at 1582 (citing *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976)). Such a drastic sanction is sustainable only when the failure to comply is attributable to willfulness, bad faith, fault, or disregard of a party's responsibilities. *Societe,* 357 U.S. at 212, 78 S.Ct. at 1095–96; *see also National Hockey League,* 427 U.S. at 640, 96 S.Ct. at 2779 (dismissal appropriate where respondents demonstrated "flagrant bad faith" and "callous disregard"); *cf. Hendler v. United States,* 952 F.2d 1364, 1382 (Fed. Cir.1991) (reversing dismissal based on alleged inadequacy of response). Simple negligence, however, due to confusion or sincere misunderstanding of a court's orders, does not warrant the extreme remedy of dismissal. *Ingalls Shipbuilding,* 857 F.2d at 1451 (quoting *Marshall v. Segona,* 621 F.2d 763, 768 (5th Cir.1980)). Nevertheless, "an exercise of the power [of dismissal] in proper circumstances is necessary 'to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the ... [trial courts].'" *Adkins,* 816 F.2d at 1582 (quoting *Link v. Wabash R.R. Co.,* 370 U.S. 626, 629–30, 82 S.Ct. 1386, 1388, 8 L.Ed.2d 734 (1962)).

The purpose of the discovery process is to secure the "just, speedy, and inexpensive determination of every action" by narrowing and defining the issues to be litigated and providing adequate information to prosecute or defend. RCFC 1(a)(2). None of these goals has been met in this case. If the judicial process is to function effectively, the court must retain the ability to control its docket and dismiss cases where counsel fail to perform their duties. *Link,* 370 U.S. at 629–30, 82 S.Ct. at 1388. *Cf. Thermocycle Int'l, Inc. v. A.F. Hinrichsen Sales Corp.,* 851 F.2d 339, 341 (Fed.Cir.1988) (holding default judgment inappropriate when counsel failed to note conflict of interest); *Landis v. North Am. Co.,* 299 U.S. 248, 254–55, 57 S.Ct. 163, 165–66, 81 L.Ed. 153 (1936) (noting that power to stay proceedings is incidental to court's inherent power to control its docket).

## 3. Plaintiffs' compliance with discovery orders and requests

The transcripts and orders on this discovery dispute explain plaintiffs' duties. The court therefore is of the view that dismissal of plaintiffs and/or issues due to plaintiffs' willful failure to comply with discovery requests is within the applicable standard and discretion of the court. *See Van Nostrand v. University of Minnesota,* 656 F.2d 315, 316 (8th Cir.1981) (finding dismissal appropriate for repeated failure to make full and timely responses to discovery requests and comply with three separate discovery orders despite explicit instructions from court).

However, fairness to the individual plaintiffs, and notions of justice allowing them their day in court, militate against taking such action at this time. *Cf. Ingalls,* 857 F.2d at 1451 (reversing dismissal where party's responses inadequate, rather than willfully ignored); *Equal Employment Opportunity Comm'n v. Troy State Univ.,* 693 F.2d 1353, 1357 (11th Cir.1982) (holding dismissal unwarranted where party's "confusion concerning ... court orders provide[d] a feasible explanation for its failure" to comply fully with discovery requests), *cert. denied,* 463 U.S. 1207, 103 S.Ct. 3538, 77 L.Ed.2d 1388 (1983). As the case law recognizes, dismissal of a case without a hearing on the merits must be the last resort for resolving this dispute. While dismissal of plaintiffs' claims may be justified, the severity of the ultimate sanction cautions acting with restraint and discretion. *See Chambers,* 501 U.S. at 44–45, 111 S.Ct. at 2132–33.

The crucial juncture at which this case stands requires all parties to use the benefit of hindsight to craft a sustainable course for the future. The court is secure in its understanding of plaintiffs' discovery burdens, but the difficulty of articulating clear language long has been the nemesis of the best-held intentions. In that light, the long record, analyzed with the microscope of time, reveals instances when the court could have offered more guidance. Had the court taken the opportunity specifically to forbid plaintiffs' use of expertly formulated estimated

averages of loss in the August 18, 1995 order, plaintiffs' course might have been clearer. The court similarly regrets directing plaintiffs to supply "information concerning the physical extent of property loss resulting from the state's movement of the Coastal Construction Control Line," *Applegate v. United States*, No. 92–832L at 4 (Fed.Cl. Aug. 18, 1995), as this language required only information on physical loss. Plaintiffs must allege some form of loss, not simply physical loss or lack thereof, to proceed with a takings claim due to movement of the CCCL.

The foregoing does not condone plaintiffs' conduct in this case. The interrogatory answers provided to defendant are inadequate and contrary to orders of the court and instructions from the bench during argument. The court will not allow plaintiffs' failure to comply with discovery requests to rule the tone or course of this litigation.

 The court will afford plaintiffs one final opportunity to provide defendant with the actual and specific losses incurred by each plaintiff due to dune and bluff erosion and the losses, not simply physical, incurred due to movement of the CCCL. *Ingalls*, 857 F.2d at 1455. While the burdens that plaintiffs face may be heavy, such is the task any claimant must perform to pursue a takings claim. Had each plaintiff sued the Government individually, each would face the identical burden. Plaintiffs' counsel's representation of over 300 individual plaintiffs in a case involving more than 300 parcels of land neither voids the requirements of pursuing a claim, nor enables willful disregard of court orders. Plaintiffs' alleged burdens have long been made known to the court. Any time constraints mandated by this order are of plaintiffs' own making.

 Plaintiffs have had ample opportunity to answer defendant's discovery requests. Their failure to do so has caused defendant unnecessary waste. Plaintiffs cannot benefit from their dilatory course of action. Expenditures of time and money incurred because of inexcusable or dilatory conduct of one party must explicitly and emphatically be denounced by the court. *See, e.g., M.A. Mortenson Co. v. United States*, 15 Cl.Ct. 362, 363–64 (1988), *aff'd on other*

*grounds*, 996 F.2d 1177 (Fed.Cir.1993). Subsequently, the court imposes as a sanction an order that the Government will not be liable for any expert or attorneys' fees and costs incurred by plaintiffs relating to defendant's Interrogatory No. 8. Should plaintiffs recover monetary awards, it will be their responsibility to delimit their claim for fees and costs in accordance with this order.

 It is unfortunate that the clients in this case, who may have legitimate claims against the Government, suffer because of the irresponsible actions of their attorneys. However, it is well settled that a client is bound by the acts or omissions of his or her lawyer. *See, e.g., Link*, 370 U.S. at 633–34, 82 S.Ct. at 1390; *Romala Corp. v. United States*, 927 F.2d 1219, 1225–26 (Fed.Cir. 1991). Dismissal of claims lies well within the discretionary bounds of the court's inherent power. Plaintiffs are strongly advised to follow the instructions of the court. Plaintiffs are being offered indulgence and forbearance with the extension of time to respond to a discovery request, which should not now be wasted.

 Delaying tactics and inadequate answers will not be tolerated. Notice has been served for the final time, and dismissal of appropriate plaintiffs and issues will follow with all due speed should plaintiffs fail to comply with this order. This court's ability to control the course of litigation with restraint and discretion is broad and powerful, *see Chambers*, 501 U.S. at 43, 111 S.Ct. at 2132; *Link*, 370 U.S. at 630–31, 82 S.Ct. at 1388–89, and should not be tested further.

### CONCLUSION

Accordingly, based on the foregoing,

**IT IS ORDERED,** as follows:

1. Defendant's Motion To Dismiss Plaintiffs and Issues is denied. However, plaintiffs may not recover from the Government expert or attorneys' fees and costs associated with this discovery.

2. Plaintiffs must complete any/all surveys by May 29, 1996. By that date, plaintiffs shall serve defendant with complete answers to Interrogatory No. 8 that identify, as

to each named plaintiff, the amount of loss or damage to each plaintiff's property claimed as a result of the Government's actions, consistent with the body of this order. Plaintiffs must specify, with respect to each named plaintiff, the nature and extent of loss due to movement of the CCCL.

3. Counsel for plaintiffs shall serve a copy of this order on each individually named plaintiff in this lawsuit.

4. Briefing on plaintiffs' pending dispositive motions shall continue in accordance with the rules of the court.