Leonard POMEROY, Plaintiff,

v.

UNITED STATES, Defendant.

No. 96–252C.

United States Court of Federal Claims.

Oct. 23, 1997.

Peter S. Herrick, Miami, FL, for plaintiff.

Steven E. Gordon, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, with whom were David M. Cohen, Director, and the Assistant Attorney General, for the defendant. Arthur I. Rettinger, Office of the Chief Counsel, United States Customs Service, Washington, DC, of Counsel.

## OPINION

HORN, Judge.

The above–captioned case comes before this court on defendant's partial motion to dismiss, and partial motion for summary judgment, and on consideration by the court of dismissal for failure to prosecute, pursuant to Rule 41(b) of the Rules of the Court of Federal Claims (RCFC).

### FACTS

Plaintiff, Leonard Pomeroy, initiated the above–captioned case in this court seeking an informant's reward pursuant to 21 U.S.C. § 881 (1994) and 19 U.S.C. § 1619 (1994) for activities which occurred over twenty (20) years ago surrounding the alleged seizure of a DC–6 aircraft and a large quantity of marijuana. Plaintiff has been represented by Peter S. Herrick, an attorney in Miami, Florida, from the time that this suit was filed in the United States Court of Federal Claims to the present.

In a sparse complaint, plaintiff alleges that between 1976 and 1979,[1] he was a confidential informant for the United States Customs Service (Customs Service), and that during the summer of 1976, he met with certain individuals to discuss a conspiracy to smuggle drugs by airplane from Columbia into the United States. According to the plaintiff, he provided agents of both the Customs Service and the United States Drug Enforcement Administration (DEA) with original information about this conspiracy, which subsequently led to the arrest and conviction of certain individuals "on charges of conspiracy to smuggle and the smuggling of drugs." Plaintiff also claims that the information he provided in 1976 led to the seizure and forfeiture of approximately 28,000 pounds of marijuana and a Douglas DC–6 or DC–7 aircraft by the Customs Service and/or the DEA, or

---

1. Approximately one year after the original complaint was filed, the plaintiff attempted to file an amended complaint as his response to the defendant's motion to dismiss. In the amended version of the complaint, plaintiff alleges that he was a confidential informant starting in 1974 as opposed to 1976. Neither date alleged by the plaintiff, however, is key to reaching a decision in this case. Moreover, although the original complaint filed by the plaintiff included a claim for twenty–five (25) percent of the value of the allegedly forfeited drugs and aircraft, in the amended complaint plaintiff abandoned the claim for recovery related to the aircraft.

"other cooperation agencies of the Defendant United States." [2]

The stipulation signed by the parties also stated that individuals involved in the drug smuggling scheme were indicted, in *United States v. Davis,* (CR–76–158–4) (M.D.Pa.), on December 21, 1976 for conspiracy to import controlled substances. Furthermore, according to the joint stipulations, the defendant temporarily secured a McDonnell–Douglas DC–6 aircraft in order to unload the contraband, but the aircraft was released by the defendant without the initiation of forfeiture proceedings subsequent to the seizure of the marijuana and the arrest of the individuals, who, eventually, were indicted.

In exchange for the information that plaintiff alleges led to the arrests and seizures, the plaintiff claims that he never received compensation "in any pecuniary manner" nor did the agencies involved inform him that he might be eligible for an informant's reward. Mr. Pomeroy alleges that some fifteen (15) years later, on or about August 15, 1991, he "first learned that he may have a right to claim an entitlement to an informant's reward."

On or about August 28, 1991, Mr. Pomeroy filed an administrative claim for an informant's reward with the DEA. The DEA denied relief on the claim and referred the claim to the Customs Service. Thereafter, plaintiff filed a claim with the Customs Service. On February 12, 1993, the Customs Service wrote to the attorney who then represented plaintiff that because of the amount of time which had elapsed since both the alleged information was provided and when the alleged seizure and forfeiture occurred, it would be "difficult if not impossible to substantiate Mr. Pomeroy's claim." The letter further indicated that plaintiff's claim failed to include a statement from a Customs Service officer verifying the allegation that Mr. Pomeroy had provided original information which had led to the arrests and seizure. The Customs Service also informed plaintiff's counsel that the claim did not adequately specify the conveyance seized or forfeited as a result of the original information provided. In addition, the Customs Service pointed out that there were no appropriated funds remaining which legally could be used to pay a claim based on events which had occurred in fiscal year 1976, and that the statute of limitations for such claims had expired.

On September 21, 1993, the Customs Service informed plaintiff's counsel that the Customs Service officer who had initiated the investigation, which Mr. Pomeroy alleged he had assisted, reported that he had not spoken to plaintiff about the case, nor had the officer received direct or indirect information about the case that was attributable to Mr. Pomeroy. Furthermore, the Customs Service indicated to plaintiff's counsel that none of the other Customs Service officers involved in the seizure had any knowledge of the plaintiff and that the official records of the seizure no longer existed. The Customs Service closed the September 21, 1993 letter with the statement that:

> Unless your client is able to provide us with a more detailed description of the original information he provided and how that information led to the seizure of the aircraft he described, his claim for moiety must fail.

On March 24, 1994, the Customs Service denied plaintiff's claim.

The following procedural history is also relevant to the issues currently before the court. Peter S. Herrick, counsel of record in the above–captioned case, filed and signed the complaint in the above–captioned case on behalf of the plaintiff. Counsel's signature appears on the last page of the complaint. In response, defendant filed a motion to dismiss. After receiving the defendant's motion

---

**2.** The joint stipulation of facts, signed by counsel for both parties and submitted to the court, states that certain individuals were arrested for importing approximately 15,000 pounds of marijuana aboard a McDonnell–Douglas DC–6 airplane.

   This joint stipulation of facts and the corresponding joint stipulation of law are the subject of some controversy. On June 9, 1997, the plaintiff signed and returned to the defendant the joint stipulations for filing with the court the next day. On September 8, 1997, almost three months after the joint stipulations had been filed with the court, plaintiff's counsel attempted to file an objection to the same joint stipulations of facts and law that he had previously signed and submitted to the defendant and to the court.

to dismiss, on April 2, 1997, the court ordered the defendant to file an amended motion to dismiss, following disclosure by the government that the aircraft at issue had not been forfeited, but only was seized temporarily and then released to the owners. In the same order, the court specifically ordered the plaintiff to file a response to defendant's amended motion to dismiss by June 10, 1997. In an order dated April 30, 1997, the plaintiff again was reminded to file a response to defendant's amended motion to dismiss. The parties also were ordered to file joint stipulations of facts and issues of law. On April 30, 1997, the defendant's amended motion for partial dismissal and for partial summary judgment was filed. Instead of responding to the defendant's amended motion, plaintiff attempted to file an amended complaint. As of this date, plaintiff has failed to respond to defendant's motion for partial dismissal or for partial summary judgment, despite the court's repeated orders to the plaintiff to do so.

Due to the failure by the plaintiff and his counsel to respond to defendant's motion to dismiss, the court scheduled a conference and oral argument to be held on September 16, 1997. Counsel for both parties were instructed to appear in person and to be prepared to argue all outstanding motions. On September 8, 1997, plaintiff's counsel, Mr. Herrick, attempted to file a motion objecting to the joint stipulations to which he previously had agreed and which were already on file with the court. Plaintiff's counsel also requested leave to appear at the scheduled conference by telephone. At the direction of the court, the court's law clerk informed plaintiff's counsel by telephone that in–person attendance by both counsel would be required. Both counsel were directed to work with each other in order to resolve any outstanding disputes regarding the joint stipulations. The court further instructed both counsel that if complete and acceptable joint stipulations of facts and issues of law were achieved prior to the evening of September 15, 1997, then the court would agree to pro-

ceed on September 16, 1997 over the telephone. The parties, however, failed to work together to resolve their outstanding differences prior to the time scheduled for the conference.

On the evening prior to the status conference, counsel for plaintiff announced to the court's law clerk over the telephone that he would not be attending the oral argument and conference in person. The next day, on September 16, 1997, when the status conference was called in the courtroom at the National Courts Building, Mr. Herrick failed to appear. The court then placed a telephone call to Mr. Herrick's office with defendant's counsel present in the courtroom, and found Mr. Herrick at his office in Florida. Over the telephone, Mr. Herrick acknowledged to the court that he had failed to file a response to the defendant's amended motion to dismiss for partial dismissal and for partial summary judgment. Upon questioning by the court, Mr Herrick also indicated that he had told his client the previous evening of "the difficulties in traveling" to Washington, D.C. to attend the status conference as ordered by the court, but that he had not explained to his client that he had "failed to respond to the motion to dismiss," and that he had "missed the deadline by months." Mr. Herrick informed the court that his client had copies of all pleadings and orders in this case. Thereafter, the court, with Mr. Herrick on the telephone, indicated on the record that based upon plaintiff's counsel's failure to appear for the status conference following the court's August 22, 1997 order to do so, the missed deadlines, the continued attempts to delay the prosecution of this case with needless filings, and the clear disregard for court orders, dismissal for failure to prosecute was an option that the court would consider.

### DISCUSSION

RCFC 41(b) allows for the dismissal of a case for failure to prosecute.[3] RCFC 41(b) reads as follows:

---

**3.** In general, the Rules of this court are patterned upon the Federal Rules of Civil Procedure. Therefore, precedent under Federal Rule of Civil Procedure 41(b) is relevant to interpreting the

Rules of this court. *See Imperial Van Lines Int'l. Inc. v. United States,* 821 F.2d 634, 637 (Fed.Cir. 1987); *Lichtefeld–Massaro, Inc. v. United States,* 17 Cl.Ct. 67, 70 (1989).

Rule 41.   **Dismissal of Actions**

**(b) Involuntary Dismissal; Effect Thereof.**  For failure of the plaintiff to prosecute or to comply with these rules or any order of court, the court may dismiss on its own motion or defendant may move for dismissal· of an action or any claim. Unless the court in its order for dismissal otherwise specifies, a dismissal under subdivision (b) of this rule and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

Because public policy strongly favors the prompt disposition of cases by trial courts, and in order to expedite judicial proceedings while preventing undue delays in the disposition of pending cases, federal trial courts have been given broad discretion to dismiss a plaintiff's action with prejudice. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629–30, 82 S.Ct. 1386, 1388–89, 8 L.Ed.2d 734, *reh'g denied*, 371 U.S. 873, 83 S.Ct. 115, 9 L.Ed.2d 112 (1962).  Several courts have indicated that, although subject to rebuttal, prejudice to the defendant resulting from unreasonable delay may be presumed. *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 42 (2d Cir.1982); *Citizens Utilities Co. v. American Telephone & Telegraph Co.*, 595 F.2d 1171, 1174 (9th Cir.1979), *cert. denied*, 444 U.S. 931, 100 S.Ct. 273, 62 L.Ed.2d 188 (1979).

■  Furthermore, a court may dismiss a case for failure to prosecute on its own initiative.  In addition to the explicit authority set forth in the Rules of the United States Court of Federal Claims, "[t]he authority of a court to dismiss *sua sponte* for lack of prosecution has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R.R. Co.*, 370 U.S. at 630–31, 82 S.Ct. at 1389 (footnote omitted); *see also Lyell Theatre Corp.*, 682 F.2d at 42–43; *Colbert v. United States*, 30 Fed.Cl. 95, 97 (1993).  The United States Court of Appeals for the Federal Circuit has explicitly adopted the standards articulated in *Link.  See, e.g., Claude E. Atkins Enters., Inc. v. United*

*States*, 899 F.2d 1180, 1184–85 (Fed.Cir. 1990); *Kadin Corp. v. United States*, 782 F.2d 175, 176–77 (Fed.Cir.), *cert. denied*, 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986).  The court in *Kadin* stated that "[i]f [Claims Court] judges are to discharge their heavy responsibilities effectively, their power to dismiss, in situations such as the one before us, must be more than theoretical." *Kadin Corp.*, 782 F.2d at 177 (quoting *Automated Datatron, Inc. v. Woodcock*, 659 F.2d 1168, 1170 (D.C.Cir.1981)).  The United States Court of Appeals for the Federal Circuit also has stated that this court's exercise of discretion to dismiss a case for failure to prosecute will not be disturbed on appeal "unless upon a weighing of relevant factors we are left with 'a "definite and firm conviction" that the court below committed a clear error of judgment.'" *Adkins v. United States*, 816 F.2d 1580, 1582 (Fed.Cir.1987) (quoting *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*, 750 F.2d 903, 917 (Fed.Cir. 1984)); *Claude E. Atkins Enters., Inc. v. United States*, 899 F.2d at 1183.

■  As noted by the United States Court of Appeals for the Federal Circuit, "dismissal is a harsh sanction...." *Kadin Corp.*, 782 F.2d at 176.  In the instant case, however, as in *Kadin,* the plaintiff and his counsel's "course of conduct reflected a callous disregard for the rules and regulations of the court and fell far short of the obligations an attorney owes to a court before which he is conducting litigation." *Id.* at 177.  When a plaintiff files a lawsuit in this court, the court must presume that the party and the party's counsel intend to prosecute that case towards a final resolution.  Disregard of court orders, as in the instant case, forces the court to abandon that presumption.

■  It also is well settled that a person is bound by the consequences of the conduct of his or her counsel, including both the acts and omissions of counsel. *Pioneer Inv. Services Co. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. 380, 396, 113 S.Ct. 1489, 1499, 123 L.Ed.2d 74 (1993); *Dungaree Realty, Inc. v. United States*, 30 F.3d 122, 125 (1994); *Huston v. Ladner*, 973 F.2d 1564, 1567 (Fed. Cir.1992); *Romala Corp. v. United States*, 927 F.2d 1219, 1225 (Fed.Cir.1991); *Whit-*

aker v. Merit Sys. Protection Bd., 784 F.2d 1109, 1110 (Fed.Cir.1986); Applegate v. United States, 35 Fed.Cl. 47, 58 (1996). Furthermore, the retaining of counsel in no way relieves a party of personal responsibility for omissions by counsel, such as delay in the submission of a timely filing. Sheeran v. Merit Sys. Protection Bd., 746 F.2d 806, 807 (Fed.Cir.1984); see also Massingale v. Merit Sys. Protection Bd., 736 F.2d 1521, 1523 (Fed.Cir.1984). The United States Supreme Court has directly addressed this issue, as follows:

> Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.' Smith v. Ayer, 101 U.S. 320, 326 [25 L.Ed. 955 (1879)].

Link v. Wabash R.R., 370 U.S. at 633–34, 82 S.Ct. at 1390. In a footnote to Link v. Wabash R.R., the United States Supreme Court stated:

> Surely if a criminal defendant may be convicted because he did not have the presence of mind to repudiate his attorney's conduct in the course of a trial, a civil plaintiff may be deprived of his claim if he failed to see to it that his lawyer acted with dispatch in the prosecution of his lawsuit. And if an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice.

Id. at 634 n. 10, 82 S.Ct. at 1390 n. 10. This notion is a basic principle of the adversarial system and has been applied in a variety of contexts to the effect that "it considers the principal as affected with notice of all facts, notice of which can be charged upon the attorney." Smith v. Ayer, 101 U.S. 320, 326, 25 L.Ed. 955 (1879). Similarly, the United States Court of Appeals for the Seventh Circuit in Anderson v. United Parcel Serv., stated that "[t]he client picks the attorney and

should be bound by that choice." 915 F.2d 313, 316 (7th Cir.1990) (citing Link v. Wabash, 370 U.S. at 633–34, 82 S.Ct. at 1390–91). The Seventh Circuit also dismissed the plaintiff's argument that the sins of the attorney should not be visited upon the client. Id. at 315.

Furthermore, lack of awareness by the client of his or her attorney's malfeasance is no excuse. As articulated in United States v. Di Mucci, notice to a party's attorney constitutes notice to that party. 879 F.2d 1488, 1495 (7th Cir.1989) (citing Link v. Wabash R.R., 370 U.S. at 633–34, 82 S.Ct. at 1390–91). The basis for this approach was explained in Tolliver v. Northrop Corp., in which the court stated:

> Although [the plaintiff] blames her lawyer for the failure, a litigant is bound by his lawyer's acts. Holding the client responsible for the lawyer's deeds ensures that both clients and lawyers take care to comply. If the lawyer's neglect protected the client from ill consequences, neglect would become all too common.

786 F.2d 316, 319 (7th Cir.1986) (citations omitted).

In the instant case, the court also notes that the claims raised by plaintiff in his complaint are unfounded and, therefore, are subject to dismissal on the merits. The defendant's amended motion to dismiss argues that plaintiff's complaint must be dismissed for lack of subject matter jurisdiction under this court's six–year statute of limitations. The defendant also argues that the complaint must be dismissed for failure to state a claim upon which relief can be granted because the plaintiff improperly seeks an informant's reward premised upon the value of contraband marijuana, which has no legitimate commercial value. In addition, the defendant alleges that the portion of the action seeking a reward premised upon the forfeiture of an aircraft by the United States is subject to summary judgment because the United States did not initiate a forfeiture action on the aircraft.

In response, the plaintiff acknowledged at the last status conference that any claims which derive from the forfeiture of the aircraft are not viable. Plaintiff contends, how-

ever, that his complaint is not barred by the statute of limitations because there was an equitable tolling of the statute of limitations. Plaintiff also argues that he can recover on the value of the seized marijuana based on the laws in effect in 1976, as opposed to those in effect in 1991, when the plaintiff formally sought a reward from the DEA and the Customs Service, or in 1996, when plaintiff's claim was filed in this court.

■ The contention of the plaintiff that the statute of limitations has not expired is simply incorrect. The plaintiff claims an informant's reward pursuant to 19 U.S.C. § 1619 and 21 U.S.C. § 881. Under 28 U.S.C. § 2501 (1994), the statute of limitations for claims presented in this court is six years, which accrues "when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action." *Kinsey v. United States,* 852 F.2d 556, 557 (Fed.Cir.1988) (citing *Oceanic Steamship Co. v. United States,* 165 Ct.Cl. 217, 225, 1964 WL 8621 (1964)). Mr. Pomeroy and his counsel do not argue that the statute of limitations started anew with the first official claim in 1991.[4] Instead, they attempt to persuade this court that although a six–year statute of limitations was in effect in 1976, it was tolled by the alleged acts of government officials that deterred Mr. Pomeroy from seeking an informant's reward in a timely manner because those officials misinformed the plaintiff that he was not entitled to a reward or failed to inform him of a right to seek such a reward. In addition, plaintiff argues that he did not discover his potential right to claim an informant's reward until August, 1991. Plaintiff's theory regarding equitable tolling is without merit. As the defendant aptly notes, the right to claim an informant's award has been available to ap-

propriate individuals since before the events in the instant case.[5] Moreover, citizens, including the plaintiff, are "charged with knowledge of the United States Statutes at Large." *Federal Crop Insur. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947); *see also Bowman v. United States,* 224 Ct.Cl. 640, 643, 650 F.2d 287 (1980) ("Ignorance of the law is not ground for tolling the statutes of limitations."). Based on the facts presented, plaintiff's claim, which accrued in 1976, is time barred under the applicable statute of limitations.

■ Both parties refer the court to two informant's reward cases, *Taylor v. United States,* 550 F.2d 983 (4th Cir.1977), and *Nicolas v. United States,* 35 Fed.Cl. 387 (1996), as relevant to the question of whether the 1976 or the more recent versions of the applicable statutes should be relied upon. The plaintiff suggests that under the *Taylor* case he has a right to demonstrate entitlement to the "legal retail market price" of marijuana (*e.g.,* sales derived from the medical treatment of glaucoma) in the computation of an informant's reward. *Taylor v. United States,* 550 F.2d at 989–90. As a Fourth Circuit case, however, *Taylor* is not binding precedent on this court. Furthermore in 1979, Congress, when amending 21 U.S.C. § 881, offered the following reasoning:

> The Drug Enforcement Administration and the Bureau of Customs have declined to pay any awards to informants under this provision for contraband controlled substances, because they have no legitimate commercial value. While small quantities of contraband controlled substances may be retained by the Government from time to time for research, by and large all contraband drugs are destroyed.

---

4. It is apparent why the plaintiff does not attempt to argue that the statute of limitations was restarted in 1991, when the plaintiff allegedly discovered that he could have filed a claim, and when the claim for moiety actually was filed with the DEA and the Customs Service, and acted upon by these agencies. Such an argument would not serve plaintiff well because then the more recent version of 21 U.S.C. § 881 would be applicable to Mr. Pomeroy's claim and clearly would bar his claim as a request for reward premised upon a contraband controlled sub-

stance. 21 U.S.C. § 881 (1990); *see also Nicolas v. United States,* 35 Fed.Cl. 387, 390–91 (1996).

5. As noted above, although plaintiff alleges that he was the informant who provided original information which led to the arrest of involved individuals and the seizure of marijuana, the government has submitted letters from the Customs Service dated February 12, 1993 and September 21, 1993, which state that Mr. Pomeroy did not offer any "original information" leading to the arrests or the forfeiture.

However, claims for compensation have been filed under 21 U.S.C. [§ ] 881, and the U.S. District Courts are not certain as to the Congressional intent in making payments under the statute for contraband goods that have no value except on the illicit market. . . .

Therefore, it is essential that the Congress clarify this issue. The Drug Enforcement Administration will still be able to provide payment of awards to informants under the general authority of section 516(a) of the Act (21 U.S.C. [§ ] 886(a)) which states:

> (a) The Attorney General is authorized to pay any person, from funds appropriated for the Bureau of Narcotics and Dangerous Drugs (now the Drug Enforcement Administration by Reorganization Plan No. 2 of 1973), for information concerning a violation of this subchapter, such sum or sums of money as he may deem appropriate, without reference to any moieties or rewards to which such person may otherwise be entitled by law.

A change in 21 U.S.C. [§ ] 881 is fully justified; the Government should not be paying a moiety for goods having no legitimate value.

*Nicolas v. United States,* 35 Fed.Cl. at 391 (quoting S.Rep. No. 173, 96th Cong., 1st Sess. 36 (1979) *reprinted in* 1979 U.S.C.C.A.N.2003, 2039–40). The *Nicolas* court also wrote:

> In this case, plaintiff provided the Customs Service with information that led to the seizure of drugs and related property. The seizure, although carried out by customs officers, took place under the drug laws. Hence, it is to those laws that plaintiff must look for his recovery, if any.

*Nicolas v. United States,* 35 Fed.Cl. at 391–92. Based on the demonstrated intent of Congress and the executive branch agencies' practice not to pay informant's rewards computed upon the value of contraband, and on the fact that the United States Court of Federal Claims in the past has rejected, albeit under the 1979 version of the statutes at issue, the notion of allowing a reward for forfeited contraband, the court declines to adopt the plaintiff's reading of the applicable laws. The plaintiff should not receive a moiety for the contraband marijuana which was seized.

Therefore, given the actions of the plaintiff and his counsel in the above–captioned case, including the obvious disregard by the plaintiff and his counsel of the court's orders, and their failure to respond to defendant's dispositive motions, combined with the lack of merit of the claims the plaintiff presented to this court, the complaint in the above–captioned case is dismissed, with prejudice. The Clerk's Office is directed to **DISMISS** the above–captioned case, with prejudice. Costs shall be awarded to the defendant.

**IT IS SO ORDERED.**